*In re* APPEAL OF HOSKINS MANUFACTURING CO.

1. TAXATION—CORPORATIONS—PRIVILEGE TAX—NET VALUE—SURPLUS.
   The ordinary meaning of "net value" as used in definition of surplus, taxable under corporation privilege tax act, must be accepted as the actual value unless the act as a whole gives it a different meaning (2 Comp. Laws 1929, §§ 10140, 10143).

2. SAME—DETERMINATION OF PRIVILEGE TAX—CORPORATE BOOKS.
   Since the corporate books represent the action of the corporation in establishing values of its assets and are required by statute to be kept correctly and the State is neither required nor authorized to audit and appraise each corporation each year, the State is generally justified in determining the corporation privilege tax from the corporate books (2 Comp. Laws 1929, §§ 10140, 10143, Act No. 327, §§ 82 [i, j, m, o], 84, Pub. Acts 1931).

3. SAME—CONSTRUCTION OF STATUTES—STATES.
   The corporation privilege tax statute should be read and administered to secure to the State all sums justly due it, but no more.

4. SAME—DETERMINATION OF PRIVILEGE TAX.
   Determination of corporation privilege tax by secretary of State implies the exercise of a *quasi*-judicial duty in using judgment and making decision after weighing all the facts, not merely accepting computation of surplus in the corporate balance sheet as final but to use the annual report and other information obtained (2 Comp. Laws 1929, §§ 10140, 10143, 10145, Act No. 327, §§ 82 [i, j, m, o], 84, Pub. Acts 1931).

5. SAME—SURPLUS—ACTUAL VALUE OF CORPORATE PROPERTY.
   In assessing corporation privilege tax, surplus must be computed upon actual value of corporate property, here shown by both annual report and corporate balance sheet, not upon book or cost value, shown by latter only (2 Comp. Laws 1929, §§ 10140, 10143, 10145, Act No. 327, §§ 82 [i, j, m, o], 84, Pub. Acts 1931).

Appeal from Corporation Tax Appeal Board. Submitted January 15, 1935. (Docket No. 88, Calendar No. 38,095.) Decided March 5, 1935.

Hoskins Manufacturing Company, a Michigan corporation, appealed from determination of Secretary of State to Corporation Tax Appeal Board as to amount of annual privilege fee for the year of 1932. Order affirmed. Hoskins Manufacturing Company appeals. Reversed and remanded.

*Lucking, Van Auken & Sprague* (*Fred J. Schumann,* of counsel), for Hoskins Manufacturing Company.

*Patrick H. O'Brien,* Attorney General (*Alice E. Alexander,* of counsel), for Corporation Tax Appeal Board.

FEAD, J.   This is an appeal from assessment of a corporation privilege tax. The question is whether "surplus" is to be computed upon actual value of the property or on book value as it was set up in the corporate balance sheet.

The controversy revolves around a single item, which appeared in the corporate balance sheet for 1932, as prepared by auditors, as "marketable investments—at cost less reserve, $671,447.38," with notation thereunder, "(Approx. market value $378,200)." Financial statements in similar form and notation were made to stockholders and creditors, showing surplus computed from the larger sum as $362,609.56. The tax was assessed upon such basis. In its annual report to the secretary of State the corporation did not set up the figures as in the balance sheet but reported the item as "investments at market value, $378,200," and sur-

plus as $69,362.18, upon which they claim the tax should be determined. On its books it carried ledger accounts of the securities showing cost and market value at the end of 1932. There is no claim that the stated market value was not correct.

The statutes of interest are:

"Every corporation * * * shall, at the time of filing its annual report with the secretary of State * * * for the privilege of exercising its franchise and of transacting its business within this State, pay to the secretary of State an annual fee of two and one-half mills upon each dollar of its paid-up capital and surplus." 2 Comp. Laws 1929, § 10140.

"The term 'surplus' as used in this act, shall be taken and deemed to mean the net value of the corporation's property, less its outstanding indebtedness and paid-up capital; but in no case, * * * shall any deduction be made from the item of paid-up capital, in computing the privilege fee thereon, by reason of any impairment of the same. * * * The secretary of State shall in all such cases be authorized to require the corporation to furnish detailed and exact information touching such several matters before making a final determination of the privilege fee to be paid by such corporation. For the purpose of this act only, each share of no par value shall be deemed to have the value of at least one dollar, or such value as shall have been fixed by the corporation for the sale of such stock, or the book value as determined by the secretary of State, whichever may be the higher." 2 Comp. Laws 1929, § 10143.

By Act No. 327, Pub. Acts 1931, the corporation, in July or August, must file a report accompanied by the annual privilege fee, showing, among other things (section 82):

"(i) The amount of capital stock paid in.

"(j) The book value of and price fixed by the corporation for the sale or exchange of its shares without par value, if any.

"(m) A complete and detailed statement of assets and outstanding liabilities of the corporation at the close of business on the thirty-first day of December. * * *

"(o) Such other information and facts as the secretary of State may demand and need for the purpose of computing the annual privilege fee provided by law."

Section 84 provides:

"The secretary of State shall carefully examine all reports filed in accordance with sections eighty-one and eighty-two of this act, and, if upon such examination they shall be found to comply with all the requirements of this act, he shall then file one of them in his office."

The law provides criminal penalties against officers or agents of the corporation who shall knowingly falsify or wrongfully alter its books, records or accounts; and penalties and civil disability against the corporation for failing or refusing to make and file the report and pay the fees and for wrongfully making any false statements in the report.

The position of the State is that, under section 82 (m), the annual report must set up the corporate balance sheet at the end of the fiscal year; the tax is determined from the books of the corporation, specifically from the balance sheet, and more specifically from the surplus as there set up; the surplus shown thereon is accepted for the tax purpose in the absence of fraud or mistake; the corporation may charge assets down to proper values but such reduced sums are not taken into account in

finding surplus unless the change is entered in the balance sheet and surplus computed accordingly thereon at the end of the year.

The State informs us that the secretary of State and corporation tax appeal board have so administered the law, without difficulty, since its original enactment in 1921, but that many claims and controversies have arisen in the past few years because auditors have marked down assets without entry of reduced values in the books, thereby enabling corporations to claim reduction of privilege tax on one basis while representing a different financial condition to stockholders and the public and thereby virtually perpetrating a fraud. There seem to be no precedents or authorities of practical help and, because the situations are varied and ought to be fully presented before determination, we think decision here should be confined to the particular case.

The definition of "surplus" in the act (2 Comp. Laws 1929, § 10143) is not different from the common understanding except in designating paid-up capital as a basis of its computation instead of book or actual capital. The ordinary meaning of "the net value of the corporation's property" is the actual value, and it must be accepted unless the act as a whole gives it a different meaning.

As a general proposition, we think the State is justified in holding that the tax is determined from the corporate books. The statute does not provide, in express language or by authorization of expense, for the impractical procedure of audit and appraisal of each corporation each year by the State. It contemplates that the tax shall be found from the annual report of the corporation to the secretary of State, supplemented by the further facts de-

manded under Act No. 327, Pub. Acts 1931, § 82(o), and the detailed and exact information provided for in 2 Comp. Laws 1929, § 10143. Obviously, the source of information and facts is the corporate books, which the statute assumes, and requires, shall be kept correctly. Obviously, also, the books represent the action of the corporation in valuing its assets and it has little cause to complain of such book values.

But, because humans may err, there are exceptions to such rule. The State itself holds the balance sheet final only in the absence of fraud or error. Such exception is reasonable and proper if "error" is given the broad meaning of "incorrectness" and works to the protection of the taxpayer as well as the State. The law should be read and administered to secure to the State all sums justly due it, but no more.

The statute does not provide that the corporation shall file its balance sheet as part of the annual report. Nor that the tax shall be assessed upon the balance sheet. So far as it is positive and unmistakable, it negatives the claim of the State in this respect. It provides a tax upon the amount of paid-up capital regardless of impairment of the same; as to shares of no par value it fixes three standards, one of which would have no place in a balance sheet; and it requires surplus to be computed upon the basis of deduction of paid-up capital, not of book capital.

Especially, the statute does not provide that the secretary of State shall or may accept the computation of surplus in the balance sheet as final. It requires him, from the annual report and the other information obtained, to make a "determination" of the tax, subject to a "redetermination" (2 Comp.

Laws 1929, § 10145) by the board on appeal, both to be made "upon the facts."

"Determination" implies judgment and decision after weighing the facts. The duty to fix the tax has a *quasi*-judicial tinge.

Undiscriminating adherence to some of the figures on a balance sheet cannot reasonably be made the measure of the tax. Because of the various reports and taxes required from corporations and the development of accounting and auditing along mysterious lines, the books and the balance sheet may have strange items and need interpreting. In *Re International Bridge Co.*, 257 Mich. 52, 58, this court found an item which was carried as an asset but in fact was not one, and which it held should not be included in the computation of the tax.

The situation at bar is another illustration of the need for "determination." All the facts appeared on the corporate books and reports. The annual report disclosed the market value of the investments. The ledger showed both cost and market value. The balance sheet obtained by the secretary of State as further information showed both values. The balance sheet itself, therefore, upon its face disclosed that the computation of surplus at the larger amount was an error and it should have been figured at the lesser amount to represent the condition of the corporation. The method of correcting the error was apparent and the "determination" required the correction. The tax should have been computed on the surplus of $69,362.18.

Reversed and remanded.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.