McLOUTH STEEL CORPORATION *v.* CORPORATION
& SECURITIES COMMISSION.

1. Taxation—Corporations—Annual Privilege Fees—Surplus—
   Reserve for Deferred Federal Income Tax—Equally Divided
   Court.

   Judgments for plaintiff domestic corporation in proceedings to
   recover payments under protest of 3 annual privilege fees based
   on noninclusion in surplus of reserves for deferred Federal
   income tax are affirmed by an equally divided court (CLS
   1956, § 450.304).

2. Costs—Construction of Statutes.

   No costs are allowed in domestic corporation's actions to recover
   3 payments of annual privilege fee, made under protest, where
   public question and matters. of statutory construction are in-
   volved.

Appeal from Court of Claims; Quinn (Timothy
C.), J., presiding. Submitted June 12, 1962. (Cal-
endar Nos. 36–38, Docket Nos. 49,273–49,275.) Re-
submitted June 4, 1963. (Calendar Nos. 1–3.) De-
cided December 5, 1963.

McLouth Steel Corporation, a Michigan corpora-
tion, filed 3 claims against State of Michigan and
Michigan Corporation & Securities Commission for
payments, made under protest, following redeter-
mination of its 1957 and determination of its 1958
and 1959 annual privilege fees. Judgments for

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 902.
   51 Am Jur, Taxation § 808 *et seq.*
[2] 14 Am Jur, Costs § 91.

plaintiff.   Defendants appeal.   Affirmed by an equally divided court.

*Dickinson, Wright, McKean & Cudlip* (*William B. Cudlip, T. Donald Wade,* and *Ernest Getz,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky* and *Robert A. Derengoski,* Solicitors General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendants.

Kavanagh, J. *(for reversal).*   Defendants appeal from the entry of judgments in 3 cases consolidated for trial in the court of claims and consolidated on appeal in this Court.

These actions were filed in the court of claims to recover from the State of Michigan the allegedly excessive portion of annual privilege fee for the years 1957, 1958, and 1959.   Judgments in favor of plaintiff totaling $248,494.24, with interest as provided by law, were entered April 12, 1961.

At issue is whether an item, originally computed as "reserve" and representing 52% of the cumulative difference between book depreciation and accelerated depreciation allowed plaintiff on computing its Federal income tax liability is properly included in the annual corporate privilege tax base of paid-up capital and surplus, prior to apportionment under the apportionment formula, to determine what portion of paid-up capital and surplus is attributable to Michigan for the purpose of measuring the annual privilege fee.

Pursuant to its statutory authority, the Michigan corporation and securities commission, in determining the plaintiff's annual corporate privilege fee for the years 1957, 1958, and 1959, included this item,

originally computed on the corporation balance sheet as "reserve", as "surplus" because it did not qualify as a deduction in determining the net value of the corporation's properties under the definition of "surplus" contained in section 4* of PA 1921, No 85, as amended. For the same reason the corporation and securities commission also disallowed the deduction of an item of "prepaid taxes" for the year 1959, that had been deducted by plaintiff from "surplus" on its balance sheet.

Subsequent to the determination by the corporation and securities commission and affirmation by the corporation tax appeal board, McLouth Steel Corporation paid the fee in the amount demanded by the commission. It then filed petitions and statements in the court of claims in the 1957 and 1958 cases, requesting judgment in the amount of fee attributable to inclusion of this item, plus interest.

Later, plaintiff filed its petition and statement of claim pertaining to its 1959 fee. This claim is based on the inclusion, as part of the base, of (1) the amount of fee attributable to the arithmetically computed item in question and (2) the item of "prepaid taxes" carried on its balance sheet as an asset.

Defendants filed answers containing affirmative defenses as follows: (1) the plaintiff has failed to state a cause of action; (2) the originally computed item in question is not deductible in computing "surplus" under the section 4 definition, and that as a matter of law defendants are required to compute corporate "surplus" for annual corporate privilege fee purposes according to the section 4 statutory definition; (3) as a matter of law, defendants need not accept the item denoted "surplus" on the balance sheet of any corporation as the taxable surplus of such corporation.

_____

* CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205).

At the pretrial conference, the parties stipulated that the witnesses who had testified before the corporation tax appeal board, if called would testify the same in the court of claims and, therefore, the record of the testimony before the corporation tax appeal board was considered the record, along with the exhibits and certain additions, for the trial in the court of claims. They further stipulated that the factual issue involved is as follows:

"Are the reserve for Federal income tax for the year 1957 and additional depreciation for the years 1958 and 1959 properly items included in surplus for franchise fee purposes under the statute?"

The parties further stipulated that the cases present the following legal issues:

"(a) In the absence of a showing of fraud or mistake, is the Michigan corporation and securities commission bound to accept the balance sheet filed with the annual report for the purpose of computing the privilege fee?

"(b) Does the order denying defendants' motion to dismiss dispose of these cases?

"(c) Can the Michigan corporation and securities commission redetermine the 1957 franchise fee after approving claimant's computation thereof?"

The record discloses that plaintiff had taken an accelerated depreciation on a 5-year basis for Federal income tax purposes, as authorized by the internal revenue code, in place of straight-line depreciation. This greater depreciation for Federal income tax purposes was different from that for book and financial reporting purposes. The record further discloses that 52% of the difference between these 2 figures is represented as a "reserve for deferred Federal income taxes" in plaintiff's December 31, 1956, balance sheet, and as "additional depreciation" on plaintiff's December 31, 1957, and December

31, 1958, balance sheets, pertaining to its 1957, 1958, and 1959 annual corporate privilege fees, respectively. Plaintiff did not include such items in its surplus for purposes of computing its privilege fee in question, and the alleged deficiencies pertain to the inclusion of these items.

At the conclusion of oral arguments, the trial court rendered an opinion from the bench which reads in its entirety as follows:

"In these 3 McLouth cases, numbers 587, 588, and 604, the court wishes to point out at the outset that I do not feel the 2 issues decided in Edison this morning are interrelated, I think they are separate and distinct. I recognize the fact that the decision of whether or not the orders of the public service commission were controlling on the Michigan corporation and securities commission for the purpose of the pending litigation was determinative of that case. However, I had the 2 situations before me and they were to be heard successively, and issue 4(b) in the Edison case is identical to issue 3(a) in the McLouth cases, and because of the fact that I knew I had to decide 3(a) in the McLouth cases I thought I might just as well make the same determination as to 4(b) in the Edison case so the record, when it got to the Supreme Court, would be decided on those 2 essential issues.

"There isn't a great deal more this court can say with respect to issue 3(a) than has already been said in the Edison litigation. If the court agreed with the contention of defense counsel that the definition of surplus as contained in section 4 of the statute is controlling without reference to any other statutes, then the decision in Edison would have been different than it was, and in these cases the decision would have to be no cause for action. I felt that I indicated as clearly as possible, for me, the reasons why I think CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205) must be read in conjunction with

other statutes. If that position is accurate then it must lead to just one conclusion, and that is that in the absence of fraud or mistake that the corporation and securities commission is bound to accept the balance sheet as filed with the annual report for the purpose of computing the franchise fee. As in Edison, in these 3 cases there is no proof of fraud or mistake other than indicated by Mr. Dexter in his argument, that if you take the position taken by these claimants and this court then you can claim there is fraud or mistake because of the way the account is handled, but as to actual incorrectness of figures or fraud in the preparation of the statement, there is no proof of that, and I am satisfied if I heard these cases several months apart instead of a matter of hours I would have to be consistent in the rulings, and I am satisfied that for the reasons stated in Edison the claims of McLouth Steel in the 3 cases indicated must be allowed for the amount of tax paid by the corporation under protest, with interest from date of payment."

Since the trial court made reference to his opinion in the *Detroit Edison Case*,* and since the opinion again was dictated from the bench and is extremely short, I am quoting it insofar as it pertains to the issues in the McLouth Steel cases:

"With respect to issue (b) under paragraph 4 of the pretrial statement, which reads:
" 'In the absence of a showing of fraud or mistake, is the corporation and securities commission bound to accept the balance sheet filed with the annual report for the purpose of computing the privilege fee?'

"It is the opinion of this court that CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205) must be read in connection with CLS 1956, § 450.82 (Stat Ann 1963 Rev § 21.82) in order properly to discern

* Decided on appeal by this Court, *Detroit Edison Company* v. *Corporation & Securities Commission*, 367 Mich 104.

the intent of the legislature and to interpret properly section 450.304 (21.205). *In re Appeal of Hoskins Manfg. Co.,* 270 Mich 592; PA 1935, No 194; and *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Commission,* 353 Mich 636, support this opinion. This being true, the items used to determine surplus as defined in section 450.304 (21.205) are to be taken from and classified as shown by the books of the corporation. In the absence of fraud or incorrectness the commission is bound by these figures and classifications in determining the annual franchise fee. There is no showing on this record of fraud or incorrectness, and the record establishes that the reserve for Federal income taxes is accurately computed and is properly carried as a liability on the books of the company and it is not part of surplus for franchise fee purposes." (*Detroit Edison Case,* January, 1962, Calendar No. 49, appellants' appendix, pp 189a, 190a.)

Defendants appeal claiming the trial court erred: (1) in not granting defendants' motions to dismiss for failure of the plaintiff to state a cause of action; (2) in holding that in computing the annual corporate privilege fee the corporation and securities commission is not required to determine "surplus" by application of the statutory definition contained in section 4,* but is bound to accept the taxpayer's accounting treatment of "surplus" as controlling; (3) in holding that the legislature authorized taxpayers, or those persons designated by them, in preparing their balance sheets for submission to stockholders, to determine such taxpayers' surplus in an amount which will be binding on the State for annual corporate privilege fee purposes; (4) in holding that taxpayers' accounting treatment of "surplus" controls for annual corporate privilege fee purposes, rather than the section 4 definition. De-

---

· *I.e.* PA 1921 No 85, § 4, as amended (CLS 1956, § 450.304 [Stat Ann 1959 Cum Supp § 21.205]).—Reporter.

fendants claim that this delegation of control to the taxpayer results in unconstitutional and nonuniform taxation.

The following portion of the trial court's opinion, quoted above, is particularly to be noted:

"If the court agreed with the contention of defense counsel that the definition of surplus as contained in section 4 of the statute is controlling without reference to any other statutes, then the decision in Edison would have been different than it was, and in these cases the decision would have to be no cause for action."

We cannot agree with the holding of the trial court that the pertinent statutory provisions, including those of PA 1931, No 327, § 82, as amended,* and PA 1921, No 85, § 4, as amended, which respectively imposed the fee and defined the term "surplus" for taxing purposes, make the corporate books, annual reports, or balance sheet, in the absence of fraud or mistake, binding on the State for the purpose of determining the privilege fee; and we do not read any of the cases cited by plaintiff as so holding.

The power to determine corporate privilege fee matters is lodged in the Michigan corporation and securities commission by the statutory law of this State—PA 1921, No 85, § 4, as amended. The commission is to exercise the power and the judiciary is to review the exercise of that power in accordance with the prescribed statutory base of paid-up capital and surplus as contained in the provisions of that section of the statute, including the definition of "surplus" found therein.

The applicable provision of said section 4 defines the term "surplus" as:

---

* CLS 1956, § 450.82 (Stat Ann 1963 Rev § 21.82).

"The net value of the corporation's property, less its outstanding indebtedness and paid-up capital; but in no case, either as to domestic or as to foreign corporations, shall any deduction be made from the item of paid-up capital, in computing the franchise fee thereon, by reason of any impairment of the same."

The same section determines the amount of the privilege fee due from a corporation at the time of filing its annual report with the commission as "4 mills upon each dollar of its paid-up capital and surplus."

Section 82 of the Michigan general corporation act* requires the filing of reports by corporations with the commission. Subsection (m) of section 82 requires that the report contain the following:

"A complete and detailed statement of the assets and outstanding liabilities of the corporation as shown by the books of such corporation, at the close of business on the 31st day of December or upon the date of the close of its first fiscal year, next preceding, which shall be the same balance sheet statement as furnished to shareholders, as provided by law."

In addition to specific items such as required by subsection (m), the reports are required to contain:

"(p) Such other information and facts as the Michigan corporation and securities commission may demand and need for the purpose of computing the annual privilege fee provided by law."

This Court in *In re Appeal of Hoskins Manfg. Co.*, 270 Mich 592, said (pp 597, 598):

"The State itself holds the balance sheet final only in the absence of fraud or error. Such exception is reasonable and proper if 'error' is given the broad

---

* PA 1931, No 327, as amended (CL 1948 and CLS 1956, §§ 450.1–450.192 [Stat Ann 1959 Cum Supp §§ 21.1–21.193]).

meaning of 'incorrectness' and works to the protection of the taxpayer as well as the State. The law should be read and administered to secure to the State all sums justly due it, but no more.   *   *   *

"Especially, the statute does not provide that the secretary of State shall or may accept the computation of surplus in the balance sheet as final. It requires him, *from the annual report and the other information obtained,* to make a 'determination' of the tax, subject to a 'redetermination' (2 CL 1929, § 10145*) by the board on appeal, both to be made 'upon the facts.'

" 'Determination' implies judgment and decision after weighing the facts. The duty to fix the tax has a quasi-judicial tinge.

"Undiscriminating adherence to some of the figures on a balance sheet cannot reasonably be made the measure of the tax. Because of the various reports and taxes required from corporations and the development of accounting and auditing along mysterious lines, the books and the balance sheet may have strange items and need interpreting. In *In re Detroit International Bridge Co.,* 257 Mich 52, 58, this Court found an item which was carried as an asset but in fact was not one, and which it held should not be included in the computation of the tax." (Emphasis supplied.)

It should be clear, then, that it is the duty and obligation of the corporation and securities commission to arrive at the computation of the privilege fee, not alone from the balance sheet but from all the information it has and can acquire at the time of the determination. Subsection (p) of section 82 requires the filing of any additional information demanded by the commission and deems this information, when demanded, as an integral part of the report to be used for fee determination. Insofar

* See, currently, CLS 1956, § 450.309 (Stat Ann 1963 Rev § 21.210). —REPORTER.

as the trial court ruled that, in the absence of fraud or mistake, the commission is bound to consider only the balance sheet as a required part of the annual report for the purpose of computing the privilege fee, it was in error.

· We might stop here in view of the trial court's statement:

"If the court agreed with the contention of defense counsel that the definition of surplus as contained in section 4 of the statute is controlling without reference to any other statutes, then the decision in Edison would have been different than it was, and in these cases the decision would have to be no cause for action."

In view of the disposition of the *Detroit Edison Case, supra,* we believe it necessary to decide the second question involved, even though the trial court did not make findings of fact with respect to it nor dispose of the question of law involved except by inference, and that inference being that he agreed with the corporation and securities commission.

It is the contention of plaintiff that if the depreciation of facilities for income tax deduction purposes is exhausted by the acceleration method in 5 years, nothing remains for depreciation and deduction purposes during the remaining life of the facility depreciated. It argues that during those subsequent years the income taxes will be correspondingly increased, and that this increase will offset the decrease enjoyed during the initial accelerated 5-year period. It contends it is for that purpose that it sets up on its books "reserve for income tax purposes."

It is the position of the corporation and securities commission that this deduction is a *non sequitur.* Income tax for subsequent years depends upon a number of factors, not just depreciation. Other such

factors are: sales, gross income, costs of operation, capital additions (which are under control of management), and it does not necessarily follow from the acceleration of depreciation that greater income taxes or any income tax will be paid for the years in which the depreciation is not available—it may or may not. Since the determination of this projected liability for which the reserve was created will be based upon several variable factors such as those mentioned above, the possibility of such liability is a contingent one, at best, and cannot be considered at this time as any more than speculative and conjectural.

Conjectural liability to another sovereign is too uncertain a foundation upon which to permit avoidance of a presently well-defined obligation to the State of Michigan. Congress has the power and authority to permit accelerated depreciation for Federal income tax purposes. It has no power or authority to write statutes for the State of Michigan on how it shall compute its privilege fee or tax. It has never attempted to do so.

The Michigan legislature has provided by statute the method of computing the fee and has defined the word "surplus." Our sole function at this point is to determine whether the reserve set up on the books of the corporation is for privilege fee purposes properly construed a part of the surplus. We conclude it is.

The benefits inuring to the corporate taxpayer through its election to use this particular depreciation method are realized immediately to the extent that the immediate savings in Federal income taxes are liquid assets disposable at the discretion of the corporation. This fact is not changed by any accounting device which places a seemingly contrary label on the item.

We are not concerned here with whether or not what was done was a sound accounting practice or good business. Even if this was good accounting or good business, it did not turn this "reserve" into an "outstanding indebtedness" and thereby remove this item from the statutory definition of "surplus." The record indicates this item belongs to McLouth Steel Corporation, and is an asset unencumbered by any present lien or obligation. If the corporation were to be dissolved today, clearly this item would be "surplus" as defined by the privilege fee statute.

We agree with the trial judge that it is necessary to consider section 82 of PA 1931, No 327 (the general corporation act), together with section 4 of PA 1921, No 85, in order to compute the privilege fee. We insist, however, that subsection (p) of said section 82 must be included along with subsection (m) in the consideration aimed at a proper construction of the various provisions. Subsection (p) makes any additional information demanded by the commission properly a part of the report to be considered by the commission. Therefore, we disagree with the conclusion of the trial judge that such information may not be considered. We conclude the corporation and securities commission properly considered all the pertinent information and properly determined the privilege fee. A judgment of no cause for action should have been entered by the lower court.

The decision of the trial court should be reversed. No costs, matters of statutory construction being involved.

CARR, C. J., and SOURIS and SMITH, JJ., concurred with KAVANAGH, J.

DETHMERS, J. (*for affirmance*). Defendants appeal from judgments, entered in the court of claims,

for plaintiff in 3 suits to recover alleged excesses in payments of its annual corporation privilege fees, paid under protest and claimed duress, in 3 successive years.

I favor affirmance. I do not agree with the holding of the trial court, however, that any provisions of statute, including those of CLS 1956, § 450.82 (Stat Ann 1963 Rev § 21.82), or of the governing section, CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205), which imposes the fee and defines the term "surplus" for taxing purposes, make the corporate books, annual report or balance sheet, in the absence of fraud or mistake, binding on the State for the purpose of determining the privilege fee. I do not read *In re Appeal of Hoskins Manfg. Co.,* 270 Mich 592, or *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Commission,* 353 Mich 636, as so holding. It is one thing to say, as in *Hoskins,* that the State is generally justified in determining the fee from the books of the corporation and that the latter cannot be heard to complain of that because it has prepared them, and quite another to say that the State is bound thereby. In fact, it is expressly stated by the Court in that case that the statute does not provide that the State shall accept as final the figures in the balance sheet filed by the corporation with respect to surplus, but (p 597) that, "from the annual report *and the other information obtained*" the State shall make a determination to be based "upon the facts". This Court said:

"The statute does not provide   *   *   *   that the tax shall be assessed upon the balance sheet."

"The State itself holds the balance sheet final only in the absence of fraud or error. Such exception is reasonable and proper if 'error' is given the broad meaning of 'incorrectness' and works to the protection of the taxpayer as well as the State."

Even this recital, by this Court, that the State follows the practice of holding the balance sheet final only in the absence of fraud or error, does not mean that the State must do so. Rather, this Court is saying that the State may do so if it gives the word "error" a sufficiently broad meaning and permits it to work to the protection of the taxpayer as well as the State. Apparently it is the position of defendants here, and of Mr. Justice KAVANAGH, that the corporation's labelling the items here in question as something else than a part of surplus is "incorrect", an "error", and, hence, even under the trial court's apparent interpretation of *Hoskins,* not binding on the State but open to determination and classification by the commission and the appeal board. The State here has not rejected the figures in plaintiff's books and report but only the labels attached thereto. It is a matter of interpreting or determining the classification under which those figures must be placed in fixing the fees. With the view that the State has the power and authority to make a determination at variance with labels employed by the corporation, I agree. With the State's determination made in this case, however, holding the items in question to be a part of plaintiff's taxable "surplus", I disagree. Hence, the occasion for this opinion, setting forth the reasons.

The claimed excesses in privilege fees paid by plaintiff consist of amounts assessed, for the first of the 3 years involved, on an item, treated by the State as part of plaintiff's surplus but displayed on the liabilities side of plaintiff's annual report as a "reserve for deferred Federal income taxes", and, for the next 2 years, on items shown on the assets side of its annual report as a deduction from assets, labelled "less allowances for depreciation and amortization". Although there was, thus, a difference in the form of bookkeeping treatment with respect to

those items between the first year and the next 2 years, the items represented the same thing and the effects were the same. The items in each instance were the sums of plaintiff's savings, for the years in question, respectively, in Federal corporation income taxes resulting from plaintiff's electing to employ, as a deduction from income, the accelerated depreciation (here 5 years) of certain facilities, permitted under Federal law, for income tax purposes, instead of normal straight-line depreciation. 26 USC (1958 ed), §§ 167, 168. That is to say, the items equal 52% (rate of Federal corporation income tax) of the difference between the amount of straight-line depreciation and of the accelerated depreciation for each of the years involved, respectively. The congressional intent and purpose of the mentioned Federal acceleration act was and is to afford to industries tax savings for the immediate period (5 years here) to be used as capital for construction and purchase of additional facilities to increase productivity and thus spur the national economy. Imposition on those items of the State privilege fee is scarcely calculated to further that congressional purpose. That cannot, of course, be controlling of our construction and application of the Michigan statute which imposes the corporation privilege fee.

Are the items in question a part of plaintiff's "surplus" as defined by the State statute, upon which the privilege fee must be paid? The State contends that they do not represent any outstanding obligation or indebtedness to the Federal government, hence are not properly listed as a deduction from assets or as a reserve for deferred Federal income taxes. In *Panhandle Eastern Pipeline Co.* v. *Federal Power Commission,* 115 App DC 8, 10 (316 F2d 659), the majority opinion contains a paragraph, with which the minority opinion does not disagree, reading as follows:

"These reserves are generated by Panhandle's use of section 167 of the internal revenue code[2] which authorizes taxpayers to write off depreciable property more quickly than is permitted under the 'straight-line' method of depreciation. The liberalized method provides higher depreciation deductions and therefore lower taxes during the early part of the life of a given property, and lower deductions and higher taxes in the later years of the life of the property. The total depreciation deductions available to a company over the entire life of a facility are the same using either method. The comparative advantage provided by liberalized depreciation is that it defers to the later life of a given property a portion of the taxes on income that would be payable in the early years under straight-line depreciation, and gives the company the use of such moneys in the interval. Liberalized depreciation under section 167 is thus said to result in tax deferrals rather than tax savings."

The quoted language is a recognition of the fact that if the depreciability of facilities, for income tax deduction purposes, is exhausted by the acceleration method in 5 years, nothing remains for depreciation and deduction purposes during, let us say, the remaining 15 years of a straight-line depreciation program. In consequence, during those years, without benefit of any depreciation deduction, the income taxes will be correspondingly increased, offsetting the decrease enjoyed during the initial accelerated 5-year period. It is for that that plaintiff says it sets aside the reserve on its books.

It is said for the State, however, that if plaintiff were to go into liquidation at the time of or before the expiration of the 5-year period, there would be no obligation on plaintiff's part then or thereafter to pay the Federal government the amount of tax

---

"[2] 26 USC § 167." (Footnote is part of quotation.) ...

savings realized during those 5 years, for which it otherwise would have had to make up during the next 15 years; that it is not at all certain that plaintiff ever will pay such increased tax for which it is asserted the reserve is set aside on the books; that the reserve is only for a contingent tax liability which plaintiff may never pay; that, therefore, it is, actually, a part of surplus subject to no obligation to the Federal government whatsoever.

Plaintiff's response to the above is that it is not merely a matter of contingency or of what may happen in the future; that consideration must be given to what already has happened; that under the accelerated method there has been a depletion of the facilities' value as an income tax deduction factor, in excess of that which would have occurred had the straight-line system been employed, leaving the facilities correspondingly of less value; that that decrease in value as an income tax reducer must be reflected in the picture of assets, including surplus, upon which the privilege tax is to be determined. Accordingly, plaintiff contends that, inasmuch as the Federal corporation income tax rate is 52%, an amount equal to 52% of the difference between straight-line and accelerated depreciation for a given year, which is, of course, the amount of the income tax savings realized during that year under the accelerated method, must be deducted from the value of the facilities in question, in order to determine the amount of plaintiff's surplus to be assessed for the privilege fee. This presents a question of fact as to the value of facilities included in the surplus item. Expert testimony of certified public accountants, who testified in the case, supports and confirms plaintiff's position in this respect, not only as to its conformance with sound accountancy practice but also as being correct as a matter of fact. We think it is sound and correct. For that reason it

should be held that the items in question are properly deducted from the value of the facilities in question, are not a part of surplus, not subject to imposition of the privilege fee, and that, therefore, the court of claims' judgments for plaintiff should be affirmed.

Affirmed, without costs, a public question and one of statutory construction being involved.

KELLY and O'HARA, JJ., concurred with DETHMERS, J.

BLACK, J. (*for affirmance*). The instant separate claims were filed in the court of claims for refund of protested payment of corporately payable franchise fees. By stipulation the 3 causes were "consolidated for hearing, briefing, argument, and decision." Among other possibly decisive issues the parties stipulated, and the trial judge accordingly included in his pretrial statement, the following "legal issue":

"In the absence of a showing of fraud or mistake, is the Michigan corporation and securities commission bound to accept the balance sheet filed with the annual report for the purpose of computing the privilege fee?"

The trial judge answered such question by direct reference to his accompanying opinion in the like case of *Detroit Edison Company* v. *Corporation & Securities Commission*, 367 Mich 104. His reasoning and ruling, with which I agree on particular strength of *In re Appeal of Hoskins Manfg. Co.*, 270 Mich 592 (considered and approved in *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Commission*, 353 Mich 636), appears in the *Edison Case* as follows:

"It is the opinion of this court that CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205) must be read in connection with CLS 1956, § 450.82 (Stat Ann 1963 Rev § 21.82) in order properly to discern the intent of the legislature and to interpret properly section 450.304 (21.205). *In re Appeal of Hoskins Manfg. Co.*, 270 Mich 592; PA 1935, No 194; and *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Commission*, 353 Mich 636, support this opinion. This being true, the items used to determine surplus as defined in section 450.304 (21.205) are to be taken from and classified as shown by the books of the corporation. In the absence of fraud or incorrectness the commission is bound by these figures and classifications in determining the annual franchise fee. There is no showing on this record of fraud or incorrectness, and the record establishes that the reserve for Federal income taxes is accurately computed and is properly carried as a liability on the books of the company and it is not part of surplus for franchise fee purposes." (*Detroit Edison Case*, January 1962, Calendar No 49, Appellants' Appendix pp 189a, 190a.)

No jurist, writing below or here in these McLouth Cases, has hinted at finding evidence of fraud or mistake, on the part of McLouth, in the preparation and submission of its successively involved reports and balance sheets. There is, as a matter of law as well as express agreement of these contenders, no such evidence. Indeed, upon reargument June 4th this year and in response to pointed questioning from the bench, no counsel disagreed on that score.

No corporate taxpayer of this claimant's standing would submit a false or erroneous balance sheet, to its shareholders and to the variety of public (national as well as State) and private agencies and institutions to which it is legally accountable and does business, without risking sanctions far more costly than the annual saving of a percentage of its annual-

ly payable privilege fees. And if this claimant had done so, in connection with its presently considered annual reports, it is fairly expectable that the defendant commission could and would have furnished, for consideration of the court of claims, an administratively detailed and altogether pertinent finding of "fraud or mistake." There is no such finding, and no suggestion thereof in the briefs. Thus if it was, right for the State to urge, as it did successfully in the *Hoskins Case,* that "the State is justified in holding that the tax is determined from the corporate books" (p 596), so it is right for this claimant to urge that the defendant commission is bound by the same rule (in the absence of course of the presently absent factor of "fraud or mistake"). Like its taxpayers, the State "must be honest." (For source of this regularly repeated quotation, see *Detroit Edison Co.* v. *State,* 361 Mich 290 at 292.)

The defendant commission and each corporate taxpayer has (or should have) a continued right to depend on the precedent of *Hoskins**  until and unless the legislature wills to the contrary. We should apply it here, without palter or quibble, just as did the trial judge.

*Summary:* Let there be proof, and an affirmative administrative finding upon such proof, of that which is concededly absent now (that is "fraud or mistake"), and the defendant commission's duty partakes at once of that "quasi-judicial tinge" the courts may not disturb (270 Mich at 598). But, in the absence of such proof, *Hoskins'* rule should be applied lest legal doors open for administrative

---

* Note that the general rule of *Hoskins* was recognized and fortified by the same-year (1935) amendment of section 82 (CLS 1956, § 450.82 [Stat Ann 1963 Rev § 21.82]), requiring that the balance sheet submitted with each annual report be the same "as furnished to shareholders"; also that the statement of assets and outstanding liabilities required of the reporting corporation be "as shown by the books of such corporation."

caprice and discrimination.   Taxpaying corporations, like widows and orphans, are entitled to equal justice under law, though they are opposed at the bar of this Court by the sovereign State itself.

Even the broad powers the defendant commission must and does possess do not include naked authority to change whimsically the administrative mind after these annual reports with paid fees have been turned in and accepted.   Significant of such arrant assumption of power is the defendant commission's letter of August 15, 1957, dunning claimant for an additional and "recomputed" amount ($95,821.32) of privilege fees for 1956 and 1957 after claimant's 1956 and 1957 reports with fees had been accepted for filing and deposit thereof made.   The letter declared: "On reviewing the case we feel that we misunderstood the adjustment in reference to the reserves for depreciation and deferred Federal income taxes. The privilege tax has been recomputed to include this item as part of taxable surplus."   From this it is clear that the defendant commission claims legal authority, upon mere *ex parte* assertion of its own "misunderstanding" of a reporting corporation's annual report, to "recompute" the amount of that corporation's annual privilege fee.   I am not disposed to vote such *ex parte* administrative power into legal being.

I would affirm on ground that the quoted and stipulated "issue of law" was answered correctly and decisively by the judge of the court of claims.