ECORSE SCREW MACHINE PRODUCTS COMPANY *v.*
CORPORATION & SECURITIES COMMISSION.

1. CORPORATIONS—STATUTES—CAPITAL PAID IN OR SUBSCRIBED.
    Capital that has been paid in and capital that has only been
    subscribed are differentiated by the legislature in laying
    down the requirements for annual corporate reports pursu-
    ant to which the annual privilege fee is determined (CL
    1948, § 450.82).

2. SAME—PAID-UP CAPITAL.
    *Paid-up capital,* as the term is used in statute providing for
    annual privilege fee of corporations, is that capital which ac-
    tually has been paid into the corporation and does not mean a
    promise or agreement to pay, but actual payment of the
    subscription value to the corporation (CL 1948, § 450.304,
    as amended by PA 1959, No 276).

3. SAME—STOCK SUBSCRIPTION—PAID-UP CAPITAL—ANNUAL PRIVI-
    LEGE FEE.
    Stock of corporation, subscribed but not paid in on date when
    annual privilege fee accrued, cannot be considered as paid-up
    capital to be used as a base for determining annual privilege
    fee (CL 1948, § 450.304, as amended by PA 1959, No 276).

4. SAME—STOCK SUBSCRIPTION—SURPLUS—ANNUAL PRIVILEGE FEE.
    Stock of corporation, subscribed but not paid in, does not
    come within term *surplus,* the net value of a corporation's
    property, less its outstanding indebtedness and paid-up
    capital, as the term is applied in the statute providing for
    imposition of annual privilege fee based on paid-up capital
    and surplus (CL 1948, § 450.304, as amended by PA 1959,
    No 276).

5. SAME—STOCK SUBSCRIPTION—ACCOUNT RECEIVABLE.
    The mere designation by a corporate taxpayer of a stock sub-
    scription as an account receivable does not constitute a basis
    for levy of an annual privilege fee on such stock subscription,
    it being necessary to go beyond simple balance sheet com-
    putations and compute such fee from all the information the
    corporation and securities commission has and can acquire

REFERENCES FOR POINTS IN HEADNOTES
[1–5]  51 Am Jur, Taxation §§ 817–819, 825 *et seq.*

at time of determination (CL 1948, § 450.304, as amended by PA 1959, No 276).

6. COSTS—PUBLIC QUESTION—TAXATION—STOCK SUBSCRIPTION.

No costs are allowed on appeal from corporation tax appeal board's determination as to corporate franchise fee on stock subscription of new corporation, a public question being involved (CL 1948, § 450.304, as amended by PA 1959, No 276).

Appeal from Corporation Tax Appeal Board. Submitted Division 1 June 8, 1965, at Detroit. (Docket No. 126.) Decided September 20, 1965. Leave to appeal granted by Supreme Court November 24, 1965.

Ecorse Screw Machine Products Company appealed a redetermination of their annual privilege fee by the Corporation and Securities Commission to the Corporation Tax Appeal Board. Annual privilege fee affirmed. Plaintiff appeals. Reversed and remanded.

*Coy & Iannelli,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *T. Carl Holbrook, William D. Dexter,* and *Richard R. Roesch,* Assistant Attorneys General, for defendant.

LESINSKI, C. J.   Ecorse Screw Machine Products Company, plaintiff-appellant, appeals a redetermination by the Michigan corporation and securities commission, as affirmed by the Michigan corporation tax appeal board, finding their recomputed annual privilege fee to be in the amount of $1,750 rather than the $12 minimum fee remitted by the plaintiff on taxable property as of December 31, 1959.

The plaintiff filed articles of incorporation with the defendant on December 22, 1959, which stated the corporation had a total authorized capital stock

of 50,000 shares having a par value of $10 per share. The five incorporators who were the partners of Ecorse Screw Machine Products Company, a Michigan copartnership, subscribed to 30,000 shares of common stock.

On or about February 1, 1960, partnership assets were transferred to the corporation and the corporation commenced business. On or about May 15, 1960, the corporation's Michigan annual report was filed showing the status of the corporation as of December 31, 1959. The annual report showed as assets of the corporation stock subscriptions receivable in the amount of $350,000 and a total liability of capital stock subscribed in the amount of $350,000. The defendant in February, 1961, duly recomputed plaintiff's annual privilege fee to be $1,750 plus a $2 filing fee under the corporation's annual report for 1960 and again in May of 1961 redetermined the fee in the same amount. The fee was recomputed on the basis that the $350,000 of stock subscriptions receivable was paid-in capital to the corporation. Since plaintiff had remitted the $12 minimum fee with its 1960 annual report, the defendant found the balance due the State to be $1,740 plus 5% interest per annum from May 16, 1960.

The corporation tax appeal board in affirming the redetermination of the corporation and securities commission stated:

"We are of the opinion that the base of the privilege fee in question is the net value of the corporation's property, less its outstanding indebtedness and paid-up capital. As there is no outstanding indebtedness nor paid-up capital the stock subscriptions receivable in the amount of $350,000 is the base."

Thus, the corporation tax appeal board in affirming the liability of the corporation found the base of the privilege fee to be surplus and not paid-up capital

as found in the redetermination of the corporation and securities commission.

The plaintiff petitioned for leave to appeal to the Michigan Supreme Court, leave being granted. The case was transferred to the Court of Appeals.

The question before this Court is whether unpaid stock subscriptions will be considered paid-up capital or surplus, and thus taxable property under CL 1948, § 450.304, as amended by PA 1959, No 276 (see Stat Ann 1959 Cum Supp § 21.205).

The legislature has not defined paid-up capital within this act, though CL 1948, § 450.82, in laying down the requirements for the annual corporate report did distinguish between "the amount of capital stock subscribed" and "the amount of capital stock paid in." CL 1948, § 450.82, subds (h)(i) (Stat Ann 1963 Rev § 21.82, subds [h], [i]). From this enumeration alone it seems clear that the legislature intended to differentiate between capital that is paid in and capital that has only been subscribed.

The Supreme Court of this State as well has often used the phrase "paid-up capital." *In re Appeal of Hoskins Manfg. Co.* (1935), 270 Mich 592; *In re Appeal of Newton Packing Co.* (1937), 279 Mich 139; *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Comm.* (1958), 353 Mich 636. But the Court has never sought to define what it meant by the term "paid-up capital."

This Court construes "paid-up capital," as used in CL 1948, § 450.304, as that capital which has been actually paid into the corporation and does not mean a promise or agreement to pay but actual payment of the subscription value to the corporation.

According to this definition as propounded by this Court, the $350,000 of the subscribed stock in the Ecorse Screw Machine Products Company cannot be considered paid-up capital. That the capital there-

after became paid-up does not alter this Court's decision. As the Supreme Court said in *Holland Hitch Company* v. *State* (1947), 318 Mich 474 at 481:

"Events occurring after tax liability has been determined in accordance with [the] statute may not, in the absence of legislative authority, affect such liability."

Thus, as of December 31, 1959, the date of determination of the taxable base, see *In re Appeal of Newton Packing Co., supra,* there was no paid-in capital available as a taxable base to Ecorse Screw Machine Products Company.

The second question the Court must address itself to is whether the $350,000 of stock subscriptions was a surplus as defined by CL 1948, § 450.304, as amended by PA 1959, No 276 (see Stat Ann 1959 Cum Supp § 21.205), which provides as follows:

"The term 'surplus' as used in this act, shall be taken and deemed to mean the net value of the corporation's property, less its outstanding indebtedness and paid-up capital; but in no case, either as to domestic or as to foreign corporations, shall any deduction be made from the item of paid-up capital, in computing the franchise fee thereon, by reason of any impairment of the same."

The Supreme Court has clearly indicated its reading of this section of the act in various cases, yet none of these readings seem to accord with that taken by the corporation tax appeal board. In *In re Appeal of Hoskins Manfg Co., supra,* 596, the Court said:

"The definition of 'surplus' in the act (CL 1929, § 10143)[1] is not different from the common understanding except in designating paid-up capital as a

[1] See, as amended, CLS 1961, § 450.305 (Stat Ann 1963 Rev § 21.208).—REPORTER.

basis of its computation instead of book or actual capital."

Surplus having been indicated to be something over and above capital, which can be either book or actual, or as in the case of Michigan the net value of the corporation's property, less its outstanding indebtedness and paid-up capital, we cannot find stock subscriptions to be surplus within the meaning of section 450.304.

Stock subscriptions when paid up would not become part of surplus but rather paid-up capital and then taxable as such, but only if the subscriptions became paid-up on or before the day the tax liability under the act accrues.

If it was the intention of the legislature that the franchise fee was to be levied on stock subscribed as part of the privilege of doing business, then it was for the legislature to so clearly state. On the contrary, the legislature chose to clearly distinguish between paid-up capital and stock subscribed. It is not within the province of this Court to substitute its judgment for that of the legislature.

Authority for the proposition that the taxing authority cannot rely on the mere designation by the taxpayer of a stock subscription as an account receivable as the basis for levy of the tax is found in *In re Appeal of Hoskins Manfg. Co., supra,* where the Supreme Court at page 598 said:

"Undiscriminating adherence to some of the figures on a balance sheet cannot reasonably be made the measure of the tax."

The logic of the *Hoskins Case* does not require the taxing authority to make a detailed analysis of the corporate balance sheet, but it does require it to look beyond the figures on the balance sheet, especially when it is clear as in the balance sheet from

Ecorse Screw Machine Products Company that no surplus was available as every dollar of the $350,000 in stock subscriptions receivables that came into the corporation would become paid-up capital and not corporate surplus.

Again in *McLouth Steel Corp.* v. *Corporation & Securities Commission*[2] (1963), 372 Mich 76, the Supreme Court reaffirms the need for the corporation and securities commission to go beyond simple balance sheet computation of the privilege fee. The Court states at p 85:

"It should be clear, then, that it is the duty and obligation of the corporation and securities commission to arrive at the computation of the privilege fee, not alone from the balance sheet but from all the information it has and can acquire at the time of determination."

It is upon this basis that this Court feels the corporation tax appeal board erred in finding that the plaintiff had $350,000 in taxable surplus.

We therefore set aside the findings of the corporation tax appeal board and remand this case to the corporation and securities commission for a redetermination not inconsistent with the findings of this Court.

Case remanded. Public question involved. No costs.

BURNS and WATTS, JJ., concurred.

---

2 The *McLouth Case* cannot be taken as precedent as it was a four-to-four decision. Yet the proposition relied on in this case has seven justices in agreement. Four justices have signed the above opinion, and two justices concur with Justice DETHMERS who states in the opinion for affirmance in *McLouth Steel Corp.* v. *Corporation & Securities Commission, supra,* at page 90, "With the view that the State has the power and authority to make a determination at variance with labels employed by the corporation, I agree." Thus, seven justices have agreed that the commission need not rely on the balance sheet alone.