BRUNSWICK CORPORATION *v.* STATE

TAXATION—FRANCHISE TAX—SURPLUS—DEFERRED FEDERAL TAXES.
  Surplus used in computing a taxpayer's state annual franchise
  privilege tax does not include deferred Federal income taxes
  which are not payable until cash payments on installments
  receivable are collected.

Appeal from Court of Claims, William J. Beer, J. Submitted Division 2 May 15, 1970, at Lansing. (Docket No. 8,450.) Decided July 29, 1970. Leave to appeal granted February 9, 1971. 384 Mich 803.

Complaint by Brunswick Corporation against the State and the Department of Treasury for privilege tax refund. Judgment for plaintiff. Defendants appeal. Affirmed.

*Miller, Canfield, Paddock & Stone* (*David J. Olmstead* and *Richard B. Gushee,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter* and *Robert J. Taube,* Assistant Attorneys General, for defendants.

---

REFERENCE FOR POINTS IN HEADNOTE
51 Am Jur, Taxation § 808 *et seq.*

Before: LESINSKI, C. J., and DANHOF and SNOW,*
JJ.

SNOW, J. Brunswick brought suit in the Court
of Claims for a refund of $16,900 out of the $103,076
franchise privilege tax it paid in connection with its
1967 Michigan Annual Report.

The $16,900 is the amount of additional annual
taxes for 1967 that resulted from the state's inclusion
of a liability account entitled "Deferred Federal In-
come Taxes" in Brunswick's taxable "surplus."
MCLA § 450.304 (Stat Ann 1970 Cum Supp § 21-
.205).[1] Such deferred income taxes represented
taxes payable by Brunswick as it collected cash pay-
ments on installment receivables. The Court of
Claims held that the amount of deferred Federal in-
come taxes should not have been included in surplus
for purposes of computing the Michigan Annual
Franchise Privilege Tax.

The sole issue in this appeal, consequently, is
whether a corporate account for deferred Federal
income taxes should be recognized by the Depart-
ment of the Treasury in computing a corporation's
surplus on which the annual privilege fee is levied.
An equally-divided Supreme Court discussed this
issue in *McLouth Steel Corporation* v. *Corporation
& Securities Commission* (1963), 372 Mich 76 in the
setting of Federal income taxes deferred by reason
of the accelerated depreciation provisions of the In-
ternal Revenue Code, 26 USC §§ 167, 168. We must
determine whether to apply the reasoning of Justice
THOMAS M. KAVANAGH for reversal or that of Jus-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The relevant portion of MCLA § 450.304 is as follows:

"The term 'surplus', as used in this act, shall be taken and deemed
to mean the net value of the corporation's property, less its outstand-
ing indebtedness and paid-up capital."

tice DETHMERS[2] for affirmance where the Federal tax deferral is occasioned by the installment sale provisions of the Internal Revenue Code, 26 USC § 453.

Brunswick Corporation is a Delaware corporation doing business in Michigan and thereby subject to the privilege fee. Its sales are substantially of the installment variety. Recognizing the significant difference between the cash-flow position of an installment-sales corporation and a cash-sales corporation, Congress enacted § 453 so that each corporation would pay the Federal income tax due as cash is realized from the profit-generating transaction. For simplicity, we will illustrate this difference with the single transaction discussed in the Court of Claims.

Both a cash-sales corporation and an installment-sales corporation sell merchandise for $200 on which the net profit is $100. A cash-sales corporation presently has the $100, of which $52 must be paid to the Federal government in income taxes and $48 goes into surplus on which the Michigan corporation privilege fee is levied. An installment-sales corporation, on the other hand, may receive $25 in cash and a note for $175, payable over eight years. It has the same accounting profit of $100, but in a substantially less liquid form. Rather than take $52 in taxes from the corporation in the year of the sale, the Federal government allows the corporation to pay in taxes only 52% of the profit realized, 52% of $12.50 or $6.50. Each year as the corporation realizes another $25, it pays an additional $6.50 to the Federal government. Thus only $6.50 of the $52 Federal tax obligation is paid in the year of the sale; the remaining $45.50 is Federal tax incurred in the year of the sale, but not payable until the installments are re-

---

[2] Justice BLACK also wrote for affirmance of the lower court's decision. He thought that the commission could not redetermine the corporate fee absent a showing of fraud or mistake on the part of McLouth Steel in the preparation of its balance sheet.

ceived.  Just as with a cash-sales corporation, an installment-sales corporation puts $48 into surplus in the initial year.  Through the use of the deferred liability account, an installment-sales corporation thus achieves a similar balance-sheet position as a cash-sales corporation.[3]

The Michigan Department of Treasury found Brunswick's privilege fee computation deficient because Brunswick deducted $45.50 from its surplus.[4]

---

[3] The accounting picture is reflected in the stipulation of facts incorporated in Judge William Beer's findings:

(i) Cash Sale
Book Entries:

| Sale | Cost of Manufacture and Selling Expenses | Profit | Federal Income Tax | Net Profit |
|---|---|---|---|---|
| $200.00 | $100.00 | $100.00 | $52.00 | $48.00 |

Balance Sheet:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $200.00 | Owed for cost of Manufacture and Selling Expenses | $100.00 |
| | | Owed for Federal Income Taxes | 52.00 |
| | | Surplus | 48.00 |
| | $200.00 | | $200.00 |

(ii) Installment Sale
Book Entries:

| Sale | Manufacture and Selling Expenses | Profit | Current Federal Income Tax | Deferred Federal Income Tax | Net Profit |
|---|---|---|---|---|---|
| $200.00 | $100.00 | $100.00 | $6.50 | $45.50 | $48.00 |

Balance Sheet:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $ 25.00 | Owed for cost of Manufacture and Selling Expenses | $100.00 |
| Installment Receiv. | 175.00 | Owed for Current Income Taxes | 6.50 |
| | | Owed for Deferred Income Taxes | 45.50 |
| | | Surplus | 48.00 |
| | $200.00 | | $200.00 |

[4] The actual figure was $24,554,587 which raised Brunswick's privilege fee for 1967 by $16,900.

The Department maintains that $93.50 is the true surplus position because $45.50 is only a contingent liability. Brunswick paid the additional assessment under protest and instituted this action in the Court of Claims for a refund. Judge Beer found that Brunswick was entitled to treat its deferred Federal income taxes as (1) outstanding indebtedness since their contingent nature was so remote, or alternatively (2) a contra-account to installment receivables to reflect the net value of the receivables. We find no error in his conclusion.

Justice T. M. KAVANAGH, speaking for the four justices advocating reversal in the *McLouth* case, considered the state's argument on contingency persuasive:

"Since the determination of this projected liability for which the reserve was created will be based upon several variable factors such as [sales, gross income, cost of operations, capital additions], the possibility of such liability is a contingent one, at best, and cannot be considered at this time as any more than speculative and conjectural.

"Conjectural liability to another sovereign is too uncertain a foundation upon which to permit avoidance of a presently well-defined obligation to the State of Michigan." 372 Mich at p 87.

Justice DETHMERS thought McLouth's claim presented a question of fact as to the net value of the depreciated facilities. He concluded:

"Expert testimony of certified public accountants, who testified in the case, supports and confirms plaintiff's position in this respect, not only as to its conformance with sound accountancy practice but also as being correct as a matter of fact. We think it is sound and correct. For that reason it should be held that the items in question are properly deducted

from the value of the facilities in question, are not a part of surplus, not subject to imposition of the privilege fee, and that, therefore, the Court of Claims' judgment for plaintiff should be affirmed." 372 Mich at pp 93, 94.

The record in the case now before us requires the same conclusion. Plaintiff's expert witness, unrebutted by the state, testified that the "net value" of the installment receivables was the face amount reduced by the deferred Federal income taxes. Plaintiff also introduced into evidence the method of reporting the § 453 deferrals approved by the Securities and Exchange Commission, a method whereby the deferred income taxes are treated as current or noncurrent liabilities, depending on their maturation date.[5] Thus all the evidence presented to the Court of Claims supports its conclusion that Brunswick's surplus should be reduced either by the SEC method or the accounting procedure suggested by plaintiff's expert.

Our decision adopting Justice DETHMER's opinion in the *McLouth* case is further justified by the *per curiam* opinion of the Supreme Court in *Corporation & Securities Commission* v. *Michigan Consolidated Gas Company* (1968), 381 Mich 116, where the Court said that the 1967 legislature had provided evidence

---

[5] The Securities and Exchange Commission's release states that: "The deduction of the deferred income taxes from the related installment receivables is not considered to be an appropriate procedure; the current value of the receivables is not affected by the amount of the tax deferral. The deferral is not a valuation reserve but a credit item representing cash retained in the business by the deferral of tax payments under the alternate tax provisions.

"Where installment receivables are classified as current assets in accordance with the operating cycle practice, the related liabilities of credit items maturing or expiring in the time period of the operating cycle, including the deferred income taxes on installment sales, should be classified as current liabilities. Installment receivables not realizable within one year and the related deferred income taxes may be classified consistently as noncurrent items." 30 FR 15420, December 7, 1965 (Securities Exchange Act Release No 7763).

that the Court of Claims had reached the correct judgment in the *McLouth* case in allowing the deferred income tax account to be deducted from surplus. In that session, the Treasury Department obtained House approval of a bill amending MCLA § 450.304 to eliminate deduction of reserves for deferred Federal income taxes arising from accelerated depreciation and amortization (HB 2832). It then died in the Senate taxation committee:

"The foregoing is fair proof that the construction placed on each of the involved statutes by Judge QUINN . * * * has not met with legislative disapproval, or even legislative concern over the impact of his reasoning upon the coffers of Michigan's treasury." 381 Mich at p 121.[6]

The Supreme Court thought the failure of the legislature to amend the statutes over the course of several years indicated approval of their construction. Two more years have now passed, and

---

[6] Similarly, both New Jersey and Texas have reached the result our Supreme Court did in *McLouth* in interpreting somewhat corresponding franchise fee statutes. In *Calvert* v. *Houston Lighting & Power Co.* (Tex Civ App, 1963), 369 SW2d 502, construing VATS-Tax-Gen, art 12.01(3)(a), the Texas court concluded the deferred Federal taxes resulting from accelerated amortization represented an expense and would never get into surplus. *American Can Company* v. *Director of the Division of Taxation* (1965), 87 Super 1 (207 A2d 699), presents the same factual situation as *McLouth.* In interpreting NJSA 54:10A-4 and 5, the court held that to include in net worth an account for deferred Federal taxes resulting from accelerated depreciation would violate accounting principles. *Contra,* but distinguishable, see *The Kroger Co.* v. *Bowers* (1965), 3 Ohio St 2d 76 (209 NE2d 209), where the income tax reserve arising out of accelerated depreciation could not be deducted in computing the franchise fee because Ohio RC § 5733.05(B) includes tax reserves in the computation except reserves for taxes due and payable during the year; *Trunkline Gas Company* v. *Mississippi State Tax Commission* (1960), 238 Miss 591 (119 So 2d 378), where the court construed Miss Code 1942, §§ 9314, 9317 which permits only reserves for fixed liabilities to be used in franchise fee computation, and the court found that the reserve for Federal taxes arising from accelerated depreciation was not within the exception because, unlike Michigan, Mississippi interprets ambiguities in tax statutes favorably to the state.

the legislature has still declined to express disapproval with Judge QUINN's interpretation of the statutes. We also decline to do so.

Affirmed. No costs, a public question being involved.

All concurred.