VAN WATSON, JR., PLAINTIFF v. WATSON SEED FARMS, INC.; RUTH
B. WATSON, DIRECTOR, GEORGE WATSON, DIRECTOR, GEORGE C.
BENEDICT, DIRECTOR, RUTH B. WATSON, AS PRESIDENT, GEORGE
WATSON, AS VICE PRESIDENT, SECRETARY-TREASURER, A. H. FITZGER-
ALD, AS VICE PRESIDENT, T. A. MUSTAIN, AS VICE PRESIDENT, DEFEND-
ANTS.

(Filed 2 November, 1960.)

**1. Corporations § 4½—**

Where a corporation has kept its books for a number of years ac-
cording to an accepted method of accounting, which system is sufficient
in computing its capital and surplus for franchise tax purposes and its
income for income tax on a cash receipt basis, the Business Corporation
Act, G.S. 55-37, does not make mandatory the abandonment of such
system or the adoption of a new system of accounting by the corporation.

**2. Same—**

G.S. 37-2 does not necessarily require a corporation to assign some
value to each article of property owned by it, and where a corpora-
tion's statement to its stockholders discloses the quantity and kind of
seed held by it, without assigning any particular monetary value to
such seed, a stockholder is not entitled to *mandamus* to compel the
corporation to assign a value to such seed in preparing its financial re-
ports.

**3. Mandamus § 1—**

*Mandamus* does not lie when plaintiff fails to establish the nonper-
formance of a duty by defendant.

APPEAL by plaintiff from *Bone, J.,* at Chambers in NASHVILLE on
15 August 1960.

Plaintiff, owning one-third of the stock of defendant corporation,
instituted this action in July 1960 to compel defendants by *mandamus*
to furnish him with accurate statements for each of the fiscal years
1956 through 1959, showing (a) annual income, (b) corporate assets
including the value of inventories and amounts owing the corpora-
tion by its officers and directors, and (c) corporate liabilities; and,
because of the failure of individual defendants to perform their duty
and supply these statements, the statutory penalty provided by G.S.
55-38(d).

Defendants denied there was any indebtedness owing by the offi-
cers and directors to the corporation. They alleged: Annual corpor-
ate profit and loss statements with balance sheets showing the con-
dition of the corporation had been prepared by a certified public ac-
countant; the statements so prepared accurately disclose the corpora-
tion's assets and liabilities and dollar value assigned to all of the
assets except seed held for sale; no value had been assigned to the

seed so held, but the quantity of each kind of seed was disclosed in the statements furnished plaintiff; copies of these statements had been given plaintiff; in addition to the information so provided, plaintiff had access to and made personal inspection of the books; the books were also made available to an auditor selected by plaintiff.

The parties did not demand a jury trial but submitted the question of plaintiff's right to *mandamus* to Judge Bone in chambers. He made no specific findings of fact. Apparently no request was made that he find facts. After reciting the evidence submitted and, "being of the opinion that the information furnished by defendants constitutes substantial compliance with the requirements of G.S. 55-37," he denied plaintiff's motion for the writ. Plaintiff excepted and appealed.

*Frank P. Meadows, Jr., and John Webb for plaintiff, appellant.*
*Battle, Winslow, Merrell, Scott & Wiley for defendant appellees.*

RODMAN, J. The question for determination is: Does the evidence submitted suffice to require the court to issue a writ commanding defendants to keep the corporate books in a manner and form different from that used by the corporation for many years?

The evidence other than facts alleged in the pleadings consists of reports made to the corporation by two certified public accountants, one, Mr. Shaw, employed by plaintiff, the other, Mr. Butler, for many years the corporation's accountant.

Mr. Shaw reported to the corporation by letter dated 28 November 1955. He accompanied his letter by statements purporting to show corporate income and expense for the year 1954 and a balance sheet at the end of that year. He concludes his letter: ". . . in my opinion, subject to the attached comments, the within statements present fairly the financial condition of Watson Farms, Inc. as of December 31, 1954, and the results of its operations for the period of five years then ended."

The Shaw balance sheet is set up in two columns, one headed "Book Values" and the other headed "Fair Market Values." Listed under current assets are "Other Inventories (See Schedule 2)." In the column headed "Book Values" these "Other Inventories" are shown to have a value of $155,790.74, and under Fair Market Values they are listed at $244,767.84.

The comment made a part of the statement reads: "The term 'Book Values' includes inventories at estimated cost values of $161,297.98 and accounts receivable of $2,386.86 not carried on the general ledger as assets because the system of accounting in use provides for the

reporting of income only as received. Accounts payable to corn growers in the amount of $26,362.52 were likewise not shown on the ledger as liabilities, so that the surplus of $172,293.34 shown herein was $137,322.32 more than the surplus of $34,971.02 shown on the books at December 31, 1954." Schedule 2, which lists the "Other Inventories," is composed, except for a small amount, of the dollar value (book or market) assigned to seed.

In 1956 Mr. Shaw, at the request of plaintiff, again examined the books of the corporation. He made a report to the officers and directors of Watson Farms, Inc. on 18 June 1956. Included in his report were (1) a statement of income and expenses for 1955 showing "Net Profit before Taxes and Life Insurance" of $7,883.17, and (2) a balance sheet for 31 December 1955 which included the item "Other Inventories" listed at estimated cost of $155,955.84, and fair market value of $223,316.39; and (3) "Other Inventories," assigning values to the articles there enumerated. The articles listed in this statement were seed, except for three items of small value.

Butler reported to the corporation on 7 February 1956: "I have examined the accounts and records of the Watson Farms, Incorporated, Whitakers, North Carolina, for the year ended December 31, 1955 for the purpose of preparing Federal and State Income Tax Returns, and as a result I have prepared the following statements reflecting the financial condition of the company as at December 31, 1955 and its operations for the year then ended:" The statements referred to consist of (a) statement of income and earned surplus showing in detail income, expenses, and operating income for the year of $21,092.70, and (b) balance sheet as of 31 December 1955 with an attached schedule of fixed assets and depreciation.

The balance sheets for the year 1955 are in agreement except for the fact that the Butler statement does not show "Other Inventories" shown on the Shaw balance sheet as having a cost value of $155,955.84 and a market value of $223,316.39.

In 1960 similar statements prepared by Butler, showing the results of the 1959 operations, were given plaintiff. These statements did not list "Other Inventories" and did not assign a specific value, either cost or market, to seed designated under the Shaw statements prepared for 1954 and 1955 as "Other Inventories."

In addition to the statements prepared by Butler, plaintiff was furnished a statement showing in detail the kind and quantities of seed held for sale. But the officers, in making this information available to plaintiff, refused to assign a value to the seed so held. They

responded to plaintiff's inquiries as to the value of the seed and gave him their ideas as to probable value but declined to assign any value in the balance sheet, asserting: "The value of such seed inventories depends entirely upon sales made due to the fact that the treated seed have virtually no value unless sold."

Plaintiff bases his asserted right to *mandamus* on the provisions of the Business Corporation Act, c. 55 of the General Statutes, which became effective 1 July 1957. Of course that Act can have no bearing on the manner in which corporations kept their books prior to its effective date. We are here concerned only with the question: Does the Act make mandatory the abandonment of a system in use for many years and the adoption of a new system of accounting?

Sec. 37 of the Act requires corporations to "(1) Keep correct and complete books and records of account." and "(4) Cause a true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for such fiscal year. . .to be made and filed at its registered office. . .in this State. . ."

Sec. 49 of the Act provides: "Surplus is the excess of a corporation's net assets, as defined in this chapter, over its stated capital."

Assets are defined in sec. 2 as ". . .those properties and rights, other than treasury shares, which in accordance with generally accepted principles of sound accounting practice, are recognized as being properly entered upon the books and balance sheets of business enterprises in terms of a monetary value."

The phrase "in accordance with generally accepted principles of sound accounting practice" appears repeatedly in those sections of the Act relating to accounting and finance. Sec. 49(b), relating to the legality of dividends, adds to the quoted phrase "applicable to the kind of business conducted by the corporation." This addition is, we think, an inherent qualification when the statutory provisions are applied to a particular corporation. What is standard accounting practice for a corner grocery store may not be standard accounting practice for corporate giants such as General Motors, American Telephone & Telegraph, and similar corporations.

Income taxes are generally recognized as an important source of revenue for governmental operations. In North Carolina income taxes rank at or near the top. Because these taxes occupy this important position, there is statutory recognition that different methods of accounting may be used, when consistently followed, to determine tax liability. G.S. 105-142. A corporation may, pursuant to promulgated state and federal regulations, use either a cash receipt or an accrual

basis in computing its income taxes. These methods of accounting are not new. Each has been in general use for many years. It is not, we think, logical to conclude that the Legislature, in adopting the Business Corporation Act, intended to require a corporation to keep two sets of books, one for its stockholders, the other for the government, if it wished to compute its taxes on a cash receipt basis. It is even more illogical to assume that the Legislature intended by the Business Corporation Act to void regulations permitting computation of taxes on the cash receipt basis and thereby outlaw that method of accounting, or to invalidate an accepted method of determining capital and surplus for franchise tax returns required by G.S. 105-122.

The definition of assets does not require the assignment of a particular monetary value to each article of property. The fact that the property does in fact have a monetary value does not necessarily require that some value be assigned to it. This is well illustrated with respect to depreciated properties. The original cost may have been fully accounted for by depreciation. Notwithstanding this fact, the article may be in use and, in fact, have a substantial value.

It is not claimed that accurate information with respect to the quantity and quality of the seed has not been given. Plaintiff is as well qualified to assign a monetary value as defendants. Whether sound accounting principles applicable to defendant's business required a monetary assignment to the seed held for sale or an accrual system of accounting to obtain a true statement of the corporation's assets and liabilities were questions of fact. The challenged system has been in use for many years with at least the tacit approval of one certified public accountant. Under the facts presented, the court was justified in concluding that the accounting system used constituted a substantial compliance with statutory requirements.

*Mandamus* issues only to compel the performance of a duty. *Hinshaw v. McIver*, 244 N.C. 256, 93 S.E. 2d 90; *Nebel v. Nebel*, 241 N.C. 491, 85 S.E. 2d 876; *St. George v. Hanson*, 239 N.C. 259, 78 S.E. 2d 885. Plaintiff, having failed to establish nonperformance of a duty, was not entitled to the writ.

Judge Bone did not pass upon the allegation that defendants had misstated the assets by their failure to "disclose balances due from officers and directors of the corporation." We find no evidence in the record purporting to establish such indebtedness. The question was not debated on the appeal. The action was not dismissed. Plaintiff may proceed to trial upon his allegation of concealment of assets.

Affirmed.