LENOIR FINANCE COMPANY v. JAMES S. CURRIE, COMMISSIONER OF REVENUE, STATE OF NORTH CAROLINA.

(Filed 1 March, 1961.)

**1. Taxation § 1a—**
    The power to tax is limited only by constitutional restrictions.

**2. Taxation § 1c**
    The constitutional requirement of uniformity in taxation extends not only to property taxes but also to license, franchise, and other forms of taxation. Constitution of N. C., Art. V § 3.

**3. Taxation § 1a:    Constitutional Law § 24—**
    A tax statute which meets the requirement of uniformity imposed by

the State Constitution meets the requirements of the Fourteenth Amendment to the Federal Constitution.

**4. Taxation § 1c:    Constitutional Law § 10—**

The formulation of classifications for taxation and the determination of the amount of taxes each class should bear are matters of public policy within the exclusive province of the Legislature, and the courts have the duty to determine only whether the classifications set up by statute are based upon differences in fact.

**5. Taxation § 1c—**

While classifications based solely on nomenclature can not be allowed to stand, the courts are not required to treat things which are different in fact as the same in law.

**6. Controversy Without Action § 2—**

An agreed statement of facts with stipulation that no facts other than those stated are material or necessary to the decision of the case, does not preclude the courts from taking notice of pertinent public laws and facts within common knowledge.

**7. Taxation § 1c—**

The imposition of taxes on installment paper dealers, G.S. 105-83 (a) (b) is not rendered discriminatory by the exemption from the tax of corporations organized under the State or national banking laws, G.S. 105-83 (d), even though banks, in addition to their regular banking business, carry on the identical business of discounting commercial paper, since the two businesses are distinct in fact and the one is subject to regulations and controls which are not applicable to the other.

APPEAL by plaintiff from *Hobgood, J.,* June 1960 Civil Term, of WAKE. Docketed and heard here as No. 454, Fall Term, 1960.

Plaintiff seeks to recover $1911.36, taxes paid under protest. It alleges the statute under which the tax was levied is unconstitutional and void.

By agreement of the parties plaintiff's right to recover was made to depend on facts summarized and quoted as follows:

(1) Plaintiff is a domestic corporation with offices in Lenoir, Statesville, Hendersonville, Elkin, and Forest City, N. C. "The plaintiff is engaged in the business of an installment paper dealer as defined in subsection (a) of Section 105-83 of the General Statutes of North Carolina and is generally engaged in the auto finance business."

(2) The provisions of G.S. 105-83 are quoted as a part of the stipulated facts.

(3) "Many of the State and National Banks in North Carolina are installment paper dealers as defined by said statute and are engaged in the auto finance business, in addition to their other activities, in substantial competition with the plaintiff and other non-bank install-

ment paper dealers, and are doing a substantial volume of the installment paper dealer business in North Carolina."

(4) Plaintiff, an installment paper dealer and auto finance company, pays to North Carolina franchise, license, intangible, sales, and income taxes, and pays to the counties and cities in which it operates *ad valorem* taxes on its real and personal property. The taxes paid include the taxes levied pursuant to the provisions of G.S. 105-83.

(5) Plaintiff made the reports required by subsection (b) of G.S. 105-83 for the quarter ending 30 September 1959 and paid under protest $1911.36 as taxes imposed by said subsection, based on the report so made. The amount so paid was in addition to the tax levied pursuant to subsection (a) of G.S. 105-83.

(6) Within thirty days after payment plaintiff made written demand for refund. The demand was rejected. Plaintiff then instituted this action.

(7) Banks doing business in North Carolina, including national banking associations, are required by G.S. 105-228.12 to pay an excise tax equal to $4\frac{1}{2}\%$ of their net income. The tax levied pursuant to that section is, by G.S. 105-228.13, in lieu of State intangible property, franchise, and income taxes, and taxes levied on tangible personal property by local taxing jurisdictions. State banks also pay the fees authorized by G.S. 53-122.

(8) National banks are taxed by North Carolina to the extent and manner permitted by Title 12, USCA, sec. 548.

"(9) The tax imposed by North Carolina General Statutes 105-83 on installment paper dealers is not imposed upon State or National banks, though many of them are also installment paper dealers in addition to their other activities, and by virtue of the provisions of Title 12 USCA, Section 548, such a tax may not be imposed upon National banks.

"(10) A substantial number of State and National Banks doing business in North Carolina engage in the business of installment paper dealers as defined in G.S. 105-83, in addition to their other activities, as do the plaintiff and other non-bank installment paper dealers. All such installment paper dealers, banks and non-banks engage in substantially identical operations with respect to their installment paper business, which do not differ in any material respect, either as to the methods and mechanics of acquiring installment paper, or as to the business arrangements with the automobile dealers, or as to the rates charged, or as to the type of paper bought, or otherwise. In general and in detail, the conduct of installment paper dealer business in North Carolina is and was at all times mentioned in the Complaint the same in all substantial and material respects, as engaged in

and carried on by State and National banks and the plaintiff and other non-bank installment paper dealers.

"(11) In a substantial number of banks this installment paper dealer business is handled by a separate department of the bank commonly known as an Installment Loan Department or as a Time Payment Department, often in an office or building entirely separate from the main bank building, and the records, bookkeeping and management personnel in such department devote their full time exclusively to the contracting for, acquisition of, collecting of, servicing of this installment paper and to other work incident to this phase of the bank's operations and the same is substantially identical to the operations of non-bank installment paper dealers. Many of the banks maintaining Installment Loan Departments or Time Payment departments keep these departments open beyond regular banking hours to conform to hours maintained by the plaintiff and other non-bank installment paper dealers.

"(12) It is further agreed that no facts other than those stated hereinabove are material or necessary to the decision of this case.

"(13) The question involved in this case is whether or not G.S., Section 105-83 of the General Statutes of North Carolina, is unlawfully discriminatory and unconstitutional. If so, the plaintiff is entitled to recover of the defendant the sum of $1,911.36 with interest; and, if not, the plaintiff is not entitled to recover."

The court, being of the opinion that the statute is not unlawfully discriminatory or unconstitutional as applied to plaintiff, adjudged it take nothing. Plaintiff appealed.

*Taylor, Allen and Warren and Fairley, Hamrick & Jack T. Hamilton for plaintiff, appellant.*

*Attorney General Bruton and Assistant Attorneys General Abbott and Young for defendant, appellee.*

RODMAN, J. W. A. Johnson, successor in office to defendant Currie, was, on motion of the State, substituted as defendant.

The legislative power to tax is limited only by constitutional provisions. Sec. 3, Art. V of our Constitution imposes the duty to tax in a just and equitable manner. It further provides: "Taxes on property shall be uniform as to each class of property taxed." Specific authority is given to tax trades, professions, franchises, and incomes. Literally the requirement of uniformity is confined to taxes on property, but repeated judicial interpretations extend this requirement to license, franchise, and other forms of taxation. *Assurance Co. v. Gold*, 249

N.C. 461, 106 S.E. 2d 875; *Roach v. Durham*, 204 N.C. 587, 169 S.E. 149; *S. v. Stevenson*, 109 N.C. 730; *Gatlin v. Tarboro*, 78 N.C. 119.

A tax statute which suffices to meet the rule of uniformity required by our Constitution likewise conforms to the requirements of the Fourteenth Amendment of the U. S. Constitution.

Since courts are not charged with the duty of providing funds for the support of government, they have no right to weigh and determine legislative wisdom in selecting one form of tax over another or one class rather than another or the proportion of the whole tax burden which any class should fairly assume. It is the duty of a court, when the validity of a tax statute is challenged on the ground of discrimination, to ascertain if in fact there is a difference in the classes taxed. Merely assigning different names to members of the same groups is not sufficient to meet constitutional requirements, but, as said by *Mr. Justice Frankfurter:* "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 84 L. ed. 1124. *Devin, J.* (later *C.J.*), put it this way: "It has been declared by this Court that the power to classify subjects of taxation carries with it the discretion to select them, and that a wide latitude is accorded taxing authorities, particularly in respect of occupation taxes under the power conferred by Art. V, sec. 3 of the Constitution." *Bottling Co. v. Shaw*, 232 N.C. 307, 59 S.E. 2d 819.

Courts have approved legislative distinctions between wholesale and retail merchants, *Leonard v. Maxwell*, 216 N.C. 89, 3 S.E. 2d 316, appeal dismissed 308 U.S. 516; a single grocery store and a chain or grouping of such stores, *Tea Co. v. Maxwell*, 199 N.C. 433, 154 S.E. 838, affirmed 284 U.S. 575; volume of business, *Nesbitt v. Gill*, 227 N.C. 174, 41 SE 2d 646, affirmed 332 U.S. 749; *Mercantile Co. v. Mt. Olive*, 161 N.C. 121, 76 S.E. 690; *Cobb v. Commissioners*, 122 N.C. 307; businesses conducted in areas of differing populations, *S. v. Green*, 126 N.C. 1032, *S. v. Carter*, 129 N.C. 560; handlers of meat products, *Lacy v. Packing Co.*, 134 N.C. 567, affirmed 200 U.S. 226; vending machines selling different kinds of merchandise, *Snyder v. Maxwell*, 217 N.C. 617, 9 S.E. 2d 19; transportation companies, based on mileage, *Clark v. Maxwell*, 197 N.C. 604, 150 S.E. 190, affirmed 282 U.S. 811; a retail sale by the producer of an article and the sale of the same article by a merchant, *Henderson v. Gill*, 229 N.C. 313, 49 S.E. 2d 754; stock companies and mutual insurance companies, *German Alliance Ins. Co. v. Lewis*, 233 U.S. 389, 58 L ed 1011; an agent whose business is selling accident insurance and an agent of a transportation company who sells accident insurance as an incident and a part of his business of selling transportation, *Hunter v. Wright*, 152 S.E. 61 (Ga.); drug

stores and news stands, even though both sell newspapers, magazines, tobacco, and soft drinks, *S. v. Towery,* 239 N.C. 274, 79 S.E. 2d 513, appeal dismissed 347 U.S. 925.

Legislatures have for many years grouped and classified those engaged in lending money based on the manner in which the business was conducted. Pawn brokers are nearly always put in a class distinct from other money lenders, and this classification has been upheld. *S. v. Davis,* 157 N.C. 648, 73 S.E. 130; *S. v. Hill,* 69 A.L.R. 574, with annotations; *Metropolitan Trust Co. v. Jones,* 149 A.L.R. 1416, with annotations. True, most of these cases deal with the exercise of the police power rather than the power to tax, but the principle involved is the same. Classification, to be valid, must rest on a genuine distinction.

We assume the parties did not, by the 12th stipulation that no facts except as stipulated were material or necessary to a decision of the case, intend to deny us the right to take notice of pertinent public laws and facts of common and general knowledge.

It is a matter of general knowledge that loans can be obtained by borrowers from many distinct kinds of business. The Federal Government has created special agencies to help certain types of borrowers. Illustrative: Home Owners Loan Corporation and Federal Land Banks, which as federal agencies, are free from State taxes. The principal private businesses making loans are insurance companies, taxed pursuant to Art. 8 b of our Revenue Act (c. 105 of the General Statutes); banks, taxed pursuant to Art. 8 c of the Revenue Act; building and loan associations, taxed pursuant to Art. 8 d; pawn brokers, taxed under G.S. 105-50; installment paper dealers, licensed and taxed under G.S. 105-83; loan agencies or brokers, licensed and taxed under G.S. 105-88. Each of these varying kinds of businesses is defined by statute. Probably all make some loans identical in all respects with loans made by some other lending agency, but that fact does not make the businesses identical.

Installment paper dealers are defined by statute, G.S. 105-83, as "engaged in the business of dealing in, buying, and/or discounting installment paper, notes, bonds, contracts, evidences of debt and/or other securities, where a lien is reserved or taken upon personal property located in this State to secure the payment of such obligations." Those engaged in this business are by subsec. a of the statute required to pay an annual license tax of $100, and by subsec. b, to pay quarterly a tax equal to .275 of 1% of the face value of the obligations handled during such quarter.

The asserted invalidity of the statute is based on subsec. d, which reads: "This section shall not apply to corporations organized under

the State or national banking laws." Although appellant has paid the taxes levied under subsecs. a and b, it does not claim that the tax levied under subsec. a is invalid. It limits its claim of invalidity to subsec. b. But if the statute is invalid because installment paper dealers and banks are in fact in the same class, the entire statute would fail, not merely subsec. b leaving in effect subsec. a which requires payment of $100 per year.

The business taxed under G.S. 105-83 is of comparatively recent origin. It came into existence primarily as a means to facilitate the sale of motor vehicles. We take judicial knowledge of the fact that there are many corporations engaged in this business. Some are financial giants and national in scope. Their shares are listed on various stock exchanges. Their resources run into hundreds of millions. They establish lines of credit and borrow from banks and insurance companies. They are created under statutes which authorize the creation of business corporations in general. They do not have to secure a certificate of convenience and necessity to begin business. They do not receive deposits.

On the other hand, the statutory definition of a bank is "any corporation, other than building and loan associations, industrial banks, and credit unions, receiving, soliciting, or accepting money or its equivalent on deposit as a business." G.S. 53-1. Before a bank can be created, application must be made to the Commissioner of Banks who must determine the need for such an institution, fitness of the proposed incorporators to conduct the proposed business, and their ability to command the confidence of the community, G.S. 53-4. The powers which a bank may exercise are enumerated in G.S. 53-43. Their right to make investments and the kinds of investments which they may make are restricted, G.S. 53-46, 48. Banks must keep on hand or in approved depositories a fixed per cent of the monies on deposit, G.S. 53-50. They cannot establish branch offices without the approval of the Commissioner of Banks, G.S. 53-62. They are subject to regulations promulgated by the Commissioner of Banks, G.S. 53-104.

The foregoing are some of the things that distinguish a bank from an installment paper dealer. The distinction between banks and installment paper dealers is at least as great as the distinction between installment paper dealers and loan agencies or brokers, G.S. 105-88. The Legislature, in providing funds for governmental needs, had a right to recognize these distinctions. If perchance some banks are operating contrary to law and regulations promulgated by the Commissioner, that fact would not nullify a statute properly enacted by the Legislature.

Not long after the business defined by statute as installment paper

dealers became economically important, several States, recognizing the distinction between such a business and the business of banking, taxed them differently. Where such statutes were challenged as arbitrary classifications, the courts upheld legislative action. *Dewey v. Richardson,* 92 N.E. 708; *Cowart v. Greenville,* 45 S.E. 122; *City Council v. Clark & Co.,* 52 S.E. 881; *Norris v. Lincoln,* 142 N.W. 114; *Link v. Commonwealth,* 265 S.W. 804; *Ormes v. Tenn. Finance Co.,* 269 S.W. 3; *Bradley & Co. v. Richmond,* 66 S.E. 872.

The facts stipulated, supplemented as they must be by matters of which we take judicial notice, support the conclusion reached by the trial court that plaintiff was not entitled to recover because of the asserted invalidity of the statute.

Affirmed.