TEXACO INC., Appellant,

v.

Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellees.

No. 12273.

Court of Civil Appeals of Texas, Austin.

July 16, 1975.

Rehearing Denied Sept. 10, 1975.

J. W. Bullion, Buford P. Berry, Emily A. Parker, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

John L. Hill, Atty. Gen., Rick Harrison, Gordon C. Cass, Asst. Attys. Gen., Austin, for appellees.

SHANNON, Justice.

This appeal concerns Tex. Tax.-Gen.Ann. Art. 12.01 *et seq.*, commonly called the "Franchise Tax." More specifically, the question involves the application for an alternative "allocation formula" by which the franchise tax of a corporation is measured.

Appellant, Texaco Inc., sued the Comptroller of Public Accounts in the district court of Travis County for a refund of $2,474,256.00 representing franchise taxes paid under protest for the year beginning May 1, 1971, and ending April 30, 1972. The basis for suit was that appellant had lodged a petition with the Comptroller, pursuant to Tex. Tax.-Gen.Ann. Art. 12.02(2), requesting the application of an alternative allocation percentage in calculating its franchise tax. The Comptroller denied the application for an alternative allocation formula, and appellant sued the Comptroller challenging that order of denial. Upon trial to the court, judgment was entered that appellant take nothing. We will affirm that judgment.

Appellant is a Delaware corporation with a valid permit to do business in Texas. In Texas and in other states appellant conducts a fully integrated oil and gas business. It also owns several subsidiary corporations and affiliated companies within the United States which are in the pipeline, chemical, or some other aspect of the oil and gas business. All of such subsidiary corporations or affiliated companies are legally constituted and separate corporate entities. Operations outside of the United States are handled altogether through subsidiary corporations or affiliated companies.

Appellant has so structured its business operation that the only business receipts it obtains from the subsidiary corporations or affiliated companies, wherever located, are dividends and interest. The dividends and interest represent the net amount earned by the subsidiaries or affiliates after allowance is made for cost of goods sold and operating and administrative expenses. Appellant's gross receipts from domestic activities are derived from the employment of operating assets and are predominantly comprised of the gross amount received from sales of oil, gas, and other petroleum products.

Tex. Tax.-Gen.Ann. Art. 12.01 levies the franchise tax. Article 12.01(1) provides that every domestic and foreign corporation chartered or authorized to do business in Texas shall pay an annual franchise tax computed upon the basis of whichever of three methods set out in subsections (a), (b), or (c) will yield the greatest tax. Subsection (a)(i) is the "basic tax." The basic tax places a tax of three dollars and twenty-five cents per one thousand dollars applied to that portion of the sum of the stated capital, surplus and undivided profits of the corporation which is "allocable to Texas" in accordance with Art. 12.02. In addition to the tax due under that subsection, subsection (a)(ii) levied upon all corporations paying a franchise tax under subsection (1) for the privilege of doing business in the corporate form an additional tax for the year May 1, 1970 to April 30, 1971 an additional tax of one dollar and fifty cents per one thousand dollars ". . . applied to that portion of taxable debt allocable to Texas."

Art. 12.02(1)(a) sets out the measurement of the tax or the "allocation" formula:

> "(1)(a) Each corporation liable for payment of a franchise tax shall determine the portion of its entire taxable capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business."

Art. 12.02(1)(b) and (d) sets forth the statutory definition of gross receipts to be employed in the allocation formula.

> "(b) For the purpose of this Article, the term 'gross receipts from its business done in Texas' shall include:
>
> "(i) Sales of tangible personal property when the property is delivered or shipped to a purchaser within this State, regardless of the F.O.B. point or other conditions of the sale, reduced by the deduction, if applicable, allowable under Subsection (c) of this Section (1);
>
> "(ii) Services performed within Texas;

"(iii) Rentals from property situated, and royalties from the use of patents or copyrights, within Texas, and

"(iv) All other business receipts within Texas."

* * * * * *

"(d) For the purpose of this Article, the term 'total gross receipts of the corporation from its entire business' shall include all of the proceeds of all sales of the corporation's tangible personal property, all receipts from services, all rentals, all royalties and all other business receipts, whether within or outside of Texas. Provided, however, that, as to the sale of investments and capital assets, the term 'total gross receipts of the corporation from its entire business' shall include only the net gain from such sales."

The refusal of the Comptroller to permit appellant to adopt alternate methods of allocation pursuant to the provisions of Art. 12.02(2) is the foundation of appellant's complaint in district court and in this Court. Art. 12.02(2) provides as follows:

"(2) If the allocation and apportionment provisions of Section (1) of this Article do not fairly represent the extent of the taxpayer's business activity in Texas, the taxpayer may petition for and the Comptroller may permit, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(a) separate accounting;

"(b) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in Texas; or

"(c) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's capital."

The "allocation formula," set out in Art. 12.02(1)(a), is the method used by the Comptroller in the measurement of the franchise tax. Reduced to a mathematical equation the "allocation formula" is as follows:

$$\frac{\text{GROSS RECEIPTS IN TEXAS}}{\text{GROSS RECEIPTS OF ENTIRE BUSINESS}} = \text{ALLOCATION PERCENTAGE} \times \text{ENTIRE TAXABLE CAPITAL} = \text{CAPITAL TAXABLE BY TEXAS} \times \text{TAX RATE} = \text{TAX}$$

At all levels of the proceedings appellant has consistently claimed in the terms of Art. 12.02(2) that the allocation formula, as applied to it, does not "fairly represent the extent of its business activity in Texas." Appellant says that this is so whether it is considered to be a domestic operating company which receives only dividends and interest from its investments in its subsidiaries and affiliates, or whether it is considered to be an integrated operation which conducts its business activities directly as Texaco Inc. and indirectly through its foreign subsidiaries and affiliates.

To remedy the claimed unfairness appellant petitioned the Comptroller for permission to use an alternative allocation formula or, alternatively for permission to file a consolidated report. As we understand, appellant's alternative allocation formula would involve a separate accounting whereby those assets representing investment capital employed or controlled and managed outside of Texas would be deducted from taxable capital prior to the computation of the franchise tax. The capital remaining would be apportioned under Art. 12.02(1). Another method proposed by appellant was permission to file on a consolidated basis wherein the gross receipts of appellant's subsidiaries and affiliates would be included in the gross receipts of appellant and that the allocation percentage thus attained would be applied against the entire combined capital of appellant and its subsidiaries and affiliates. One more alternative method pressed by appellant was the use of "constructive gross receipts." Under that method the gross receipts which give rise to dividends would be reconstructed or as a witness said "estimated" and would be in-

cluded with the other gross receipts of appellant for the purpose of allocation under Art. 12.02(1). Under any of the proposed alternative methods of allocation, as we understand, the denominator of the fraction in the allocation formula would be increased, thereby decreasing the allocation percentage and substantially increasing the tax savings to appellant. The refusal of the Comptroller to permit appellant to adopt one of the alternative methods of allocation pursuant to the provisions of Art. 12.02(2) is the foundation of appellant's complaint.

The record was largely stipulated. After judgment and upon request the court filed findings of fact and conclusions of law. The court concluded, among other things, that the franchise tax is a privilege tax levied on appellant for the right to do business in Texas in the corporate form, and the tax so levied is constitutional. The receipts from appellant's investments in subsidiary or affiliated corporations in the form of dividends or interest are gross receipts of appellant within the meaning of Art. 12.-02(1), and the inclusion of those receipts in the allocation formula designated "total gross receipts of the corporation from its entire business" does not amount to a taxation of the extraterritorial values and activities. Appellant is not authorized to utilize the gross receipts of its subsidiary or affiliated corporations in the compilation of alternative formulae for relief because such gross receipts are not receipts of appellant but instead are the receipts of the said subsidiaries or affiliates which are separate, legally constituted corporate entities. The court concluded further that appellant failed to prove by "clear and competent" evidence that the allocation and apportionment provisions of Art. 12.02(1) did not fairly represent the extent of appellant's business activities in Texas for the period in question. Finally, the court concluded that the alternative methods of computing the franchise tax requested by appellant did not reasonably represent the extent of appellant's business activity in Texas.

Appellant attacks the judgment by five points of error: (1) the court erred in finding that appellant failed to prove by clear and competent evidence that the allocation and apportionment provision, Art. 12.-02(1)(a), as applied to appellant, did not fairly represent the extent of its business activities in Texas for the year in question, (2) the court erred in finding the Comptroller afforded appellant a full and comprehensive hearing on its petition for alternative allocation because the Comptroller and the court failed to apply correctly the statutory standards in considering the petition, (3) the court erred in finding that the alternative methods of computing franchise taxes requested by appellant did not reasonably represent the extent of Texaco's business activity in Texas, (4) the court erred in finding that appellant is not authorized its consolidated financial statement in the compilation of the allocation percentage, and (5) the court erred in finding that the allocation and apportionment provisions of Art. 12.02(1)(a) as applied to appellant, did not result in the taxation of extraterritorial values and activities of appellant by Texas in violation of the Constitution of the United States.

The franchise tax does not burden any specific asset of the corporation, but instead that tax is a payment for the privilege of transacting business within Texas. The State is empowered to levy such a charge against domestic or foreign corporations for the opportunity to transact such business. *Ford Motor Co. v. Beauchamp,* 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304 (1939). The Texas gross receipts formula was held to be constitutional in *Ford Motor Co. v. Beauchamp, supra.*[1]

1. Although appellant's fifth point of error is that the application to appellant of the allocation and apportionment formula of Art. 12.02(1)(a) was "in violation of the Constitution of the United States," that point was not seriously urged in the trial court or this Court. For example, counsel for appellant told the trial court, "We [appellant] don't contend that the Texas statute is necessarily unconstitutional."

Before the Comptroller is called upon to consider alternative allocation formulae, pursuant to the terms of Art. 12.-02(2), the taxpayer has the burden to demonstrate that the allocation and apportionment provisions of Section (1) do not fairly represent the extent of the taxpayer's business activity in Texas. If the taxpayer successfully discharges that burden, then the Comptroller *may* permit other allocation methods *if* reasonable. The Comptroller is not required to grant the taxpayer relief simply because alternative formulae, which produce a lesser tax, are proposed. The Comptroller's grant of relief to the taxpayer is permissive and is predicated upon a showing that the proposed alternate formulae are reasonable.

We are in general agreement with the trial court that the appellant failed to show that the allocation and apportionment provisions of Art. 12.02(1) did not fairly represent the extent of appellant's business activities in Texas for the period in question. But assuming that appellant made that showing, we are of the opinion that the Comptroller did not abuse his discretion in failing to adopt one of the alternative formulae proposed by appellant. Appellant's chief complaint is the inclusion of the dividends and interest of its subsidiaries in the denominator of the allocation formula without the inclusion of the gross receipts of those subsidiaries. The inclusion of the gross receipts of the subsidiaries wound increase the denominator, would thereby lower the percentage of business done in Texas and lower, of course, the amount of franchise tax due.

The alleged unfairness to appellant came about by appellant's decision in times past to operate in part through separate subsidiary corporations and affiliated companies rather than through divisions of the same corporation. As a result, dividends and interest constitute all of the "business receipts" which appellant receives from its subsidiaries. Art. 12.02(1)(d) provides that the term " 'total gross receipts of the corporation from its entire business' shall include all of the proceeds of all sales . . . and *all other business receipts, whether within or outside of Texas.*" (Emphasis added) As previously observed, all of the subsidiary corporations or affiliated companies are legally constituted and separate corporate entities. For purposes of computing the franchise tax, dividends and interest, whether from sources within or without Texas can properly be considered under Art. 12.02(1)(d) as "other business receipts."

Because the subsidiary corporations or affiliated companies are separate corporate entities, their gross receipts may not be included in those receipts of appellant. To do so, would ignore the fact of their separate corporate existence.

Moreover, Art. 12.02(1)(a) begins: "*Each corporation* liable for payment of a franchise tax shall determine the portion of *its* entire taxable capital . . ." (Emphasis added) That language plainly requires that the gross receipts formula applies to only one corporation at a time.

Appellant made the decision with respect to the formulation of its corporate structure. Appellant's choice was to incorporate as a parent corporation with subsidiaries as separate corporate entities, instead of as a parent corporation with divisions, joint ventures or partnerships. Appellant knew that in the parent corporation-subsidiary corporation arrangement, the gross receipts of the subsidiaries could not be used under Art. 12.02(1), but instead only the dividends and interest from those subsidiary corporations.

The judgment is affirmed.

Affirmed.