BROADWELL REALTY CORPORATION v. J. HOWARD COBLE, SECRETARY OF REVENUE FOR THE STATE OF NORTH CAROLINA

No. 155

(Filed 31 January 1977)

**1. Taxation § 23— construction of tax statute**

Where a statute imposing a tax is ambiguous or there is doubt as to the proper interpretation of the statute, the statute is construed in favor of the taxpayer and against the State; however, where a statute provides an exemption from taxation, the statute is construed strictly against the taxpayer and in favor of the State.

**2. Taxation § 23— construction of tax statute — administrative interpretation**

While the construction placed upon a revenue Act by the Commissioner of Revenue will be given due consideration by the courts, such construction is not controlling or binding.

**3. Taxation § 26— franchise tax base — deferred income taxes on installment sales**

Deferred potential state and federal income taxes on income which will be received in the future from installment sales are not "definite and accrued legal liabilities" or "taxes accrued" which may be deducted from the taxpayer's franchise tax base under G.S. 105-122(b).

**4. Taxation § 26— franchise tax base — deferred income taxes on installment sales**

A corporate taxpayer, having voluntarily elected the installment method of accounting for income tax purposes, may not deduct deferred income taxes on installment sales from surplus in determining its franchise tax base, although generally accepted accounting principles would permit such a deduction from surplus, since the franchise tax statute, G.S. 105-122, does not authorize the deduction of deferred income taxes from the franchise tax base or the use of generally accepted accounting principles to compute the tax.

**5. Taxation § 26— franchise taxes — use of corporation's books and records**

That portion of the franchise tax statute, G.S. 105-122, which states that the tax shall be computed from the "books and records of the corporation" is not a requirement that the Commissioner of Revenue follow the categorizations placed upon the information contained in the books and records; rather, the statute authorizes the Commissioner to require such facts and information as are deemed necessary to comply with his duty to assess the franchise tax in accordance with the statute.

Realty Corp. v. Coble, Sec. of Revenue

6. Taxation § 26— franchise taxes — deferred income taxes — different treatment of accrual and cash basis taxpayers — equal protection — uniform taxation

   To permit an accrual method taxpayer to deduct from its franchise tax base those taxes attributable to installment sales and to deny such a deduction to a cash basis taxpayer reporting under the installment method is not a denial of equal protection of the laws under the Fourteenth Amendment to the U. S. Constitution or a violation of Article V, § 3 (as it existed in 1965) of the N. C. Constitution requiring that taxes be levied by "uniform rule," since the different treatment of cash basis and accrual taxpayers is based upon a rational reason, and all corporations in the same classification are taxed in the same manner.

ON petition for discretionary review of the decision of the Court of Appeals, reported in 30 N.C. App. 261, 226 S.E. 2d 869, which affirmed judgment for plaintiff entered by *Bailey, J.,* at the 9 October 1975 Civil Session of WAKE Superior Court.

Plaintiff is a North Carolina corporation whose principal activity is the construction and sale of residential dwellings to individuals in Cumberland County. To effectuate a sale, plaintiff usually received a small down payment from the purchaser. The purchaser then assumed a first mortgage on the property, which was held by a third party lender, and gave plaintiff a second mortgage upon the property. Plaintiff remained liable on the first mortgage.

Pursuant to section 453 of the Internal Revenue Code, plaintiff elected to report the income received from these sales under the "installment method." Under this method, plaintiff reported taxable gain, and accordingly paid income tax thereon, on the installments in the year in which the payments were actually received. The money to be received in the future as installment payments was carried on plaintiff's books as "Deferred Sales—Installment Basis." For the year ending 31 October 1964, plaintiff had $142,650.87 in the deferred sales account.

In computing the amount owed as franchise tax for 1965 (this covered the year ending 31 October 1964), plaintiff did not include the $142,650.87 of deferred sales. The Secretary of Revenue audited plaintiff and assessed an additional franchise tax of $213.98, plus $6.42 interest, based upon an inclusion of the deferred sales account in the computation of plaintiff's franchise tax base. Plaintiff sued for a partial refund. In its

complaint, plaintiff alleged that if the amount carried as deferred sales was to be included in the computation of the franchise tax, a deduction for future state and federal income taxes arising from those sales should be allowed as a deduction.

At trial on the merits, before Judge Bailey, without a jury, both parties introduced evidence. At the close of the evidence, defendant moved for nonsuit. This was overruled, and plaintiff's claim for a partial refund was allowed, based upon Judge Bailey's conclusion that a deduction from deferred sales for state and federal income taxes to become due in the future was proper. The Court of Appeals affirmed and we granted defendant's petition for discretionary review.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Biggs, Meadows, Batts, Etheridge & Winberry by Frank P. Meadows, Jr. for plaintiff appellee.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General George W. Boylan for J. Howard Coble, Secretary of Revenue, defendant appellant.*

MOORE, Justice.

The sole question for decision is whether the plaintiff, having voluntarily elected the installment method of accounting for income tax purposes, may deduct deferred, potential state and federal income tax liabilities from its franchise tax base under G.S. 105-122(b).

Plaintiff contends that it should be permitted to deduct from its franchise tax base, as computed under G.S. 105-122(b), the amount of state and federal income taxes which may become due as certain installment income is received in the future. This contention is based upon the premise that generally accepted accounting principles would permit such a deduction from surplus. Defendant rejects this contention upon the ground that G.S. 105-122 provides that no reservation or allocation from surplus or undivided profits shall be allowed for items other than those specified in G.S. 105-122(b). Defendant thus argues that since future income tax liability which may or may not arise in the future does not constitute a "definite and accrued

legal liability" or "taxes accrued" within the meaning of G.S. 105-122(b), the amount claimed by plaintiff is not deductible.

The franchise tax payable by a corporation in this State is determined by G.S. 105-122 through G.S. 105-129.1. G.S. 105-122(b), in pertinent part, provides:

> "(b) Every such corporation taxed under this section shall determine the total amount of its issued and outstanding capital stock, surplus and undivided profits; no reservation or allocation from surplus or undivided profits shall be allowed other than for definite and accrued legal liabilities, except as herein provided; taxes accrued, dividends declared and reserves for depreciation of tangible assets as permitted for income tax purposes shall be treated as deductible liabilities. . . . "

Franchise taxes are imposed upon corporations for the opportunity and privilege of transacting business in this State. It is an annual tax which varies with the nature, extent and magnitude of the business conducted by the corporation in this State. *Telephone Co. v. Clayton, Comr. of Revenue*, 266 N.C. 687, 147 S.E. 2d 195 (1966); *Stagg v. Nissen Co.*, 208 N.C. 285, 180 S.E. 658 (1935). *See also Texaco, Inc. v. Calvert*, 526 S.W. 2d 630 (Tex. Civ. App. 1975).

[1, 2]  In construing taxing statutes, there are several well established rules of construction. Where the statute is ambiguous or there is doubt as to the proper interpretation of a statute which imposes a tax, the statute is construed in favor of the taxpayer and against the State. *Food House, Inc. v. Coble, Sec. of Revenue,* 289 N.C. 123, 221 S.E. 2d 297 (1976); *In re Clayton-Marcus Co.*, 286 N.C. 215, 210 S.E. 2d 199 (1974); *Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 166 S.E. 2d 671 (1969). However, where a statute provides for an exemption from taxation, the statute is construed strictly against the taxpayer and in favor of the State. *In re Clayton-Marcus Co., supra; In re Appeal of Martin*, 286 N.C. 66, 209 S.E. 2d 766 (1974). The underlying premise when interpreting taxing statutes is: "Taxation is the rule; exemption the exception." *Odd Fellows v. Swain*, 217 N.C. 632, 637, 9 S.E. 2d 365, 368 (1940). Further, the construction placed upon a revenue Act by the Commissioner of Revenue will be given due consideration by the Court; but such construction is not controlling or binding. *Campbell v. Currie, Commissioner of Revenue*, 251 N.C. 329,

111 S.E. 2d 319 (1959). The above stated rules of construction are relevant, however, only in those instances in which the interpretation of the statute is ambiguous or in doubt. When the statute is clear and not capable of several interpretations, the plain meaning, as gleaned from the words of the statute, controls. *In re Clayton-Marcus Co., supra; In re Appeal of Martin, supra; Pipeline Co. v. Clayton, Comr. of Revenue, supra.*

[3] The threshold question is whether plaintiff's deferred taxes are "definite and accrued legal liabilities" or "taxes accrued" under G.S. 105-122(b) as interpreted by the rules of construction stated above. As was stated in *Dixie Pine Products Co. v. Commissioner,* 320 U.S. 516, 519, 88 L.Ed. 270, 272, 64 S.Ct. 364, 365 (1944), a liability is accrued, and thus deductible, when "all events [have occurred] in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent. . . . " Taxes are generally deemed to accrue when all events have occurred which fix the amount of the tax and the taxpayer's liability therefor. *VanNorman Co. v. Welch,* 141 F. 2d 99 (1st Cir. 1944). *See also Hart Metal Products, Corp. v. Commissioner,* 437 F. 2d 946 (7th Cir. 1971).

The allowable deductions from the franchise tax base under G.S. 105-122(b) are clear and unambiguous. The permissible deductions, relevant to this case, are "definite and accrued legal liabilities" and "taxes accrued." The amounts which plaintiff is attempting to deduct are not definite and accrued liabilities. The sums are not definitely fixed in amount and plaintiff is not presently liable for the amounts. Likewise, there is no permissible deduction for the amounts sought to be deducted as "taxes accrued." Neither the amount of, nor the liability for, such deferred taxes is fixed. Thus, under the plain meaning of G.S. 105-122(b), the deduction claimed by plaintiff for deferred income taxes was properly denied.

[4] In its opinion, the Court of Appeals stated that the deferred taxes were not technically "accrued" under the wording of G.S. 105-122(b), but further stated that the statute should be strictly construed against the Commissioner because it was a tax levy. That court reasoned that G.S. 105-122 provides for the computation of the franchise tax in accordance with the books and records of the corporation, and that books and records of a corporation should be kept in accordance with the Business

Corporation Act, Chapter 55 of the General Statutes of North Carolina. Therefore, the definitions contained in Chapter 55 relating to the computation of "surplus" should be controlling. Since under the Act these records and computations are to be maintained in accordance with generally accepted accounting principles, the court further reasoned that the franchise tax should also be computed in such manner. Accordingly, since plaintiff's evidence showed that it is a generally accepted accounting principle to deduct deferred income taxes from the income which will be received from the installment sales, the Court of Appeals held the deferred taxes were properly deductible.

The Court of Appeals relied heavily upon *American Can Co. v. Director of Div. of Tax,* 207 A. 2d 699 (N. J. Super. Ct.), *cert. denied,* 210 A. 2d 629 (1965). In *American Can,* the Director audited plaintiff's franchise tax return and included amounts listed as deferred income taxes in the computation of surplus for franchise tax purposes. The New Jersey Superior Court held that this was error. The franchise tax statute in New Jersey states that a franchise tax shall. be levied upon the net worth of a corporation as determined from the books and records of the corporation. The statute, however, further provides that the Director is empowered to make his own determination of net worth "in accordance with sound accounting principles. . . ." Since the Director was statutorily required to make his determination in accordance with sound accounting principles, the court held that deferred income taxes were properly deductible from the franchise tax computation.

We are of the opinion that *American Can* is distinguishable from instant case. G.S. 105-122(a) provides, in addition to that portion of the statute relied upon by the Court of Appeals, that corporations shall:

> "[M]ake and deliver to the Commissioner of Revenue in such form as he may prescribe a full, accurate and complete report and statement signed by either its president, vice-president, treasurer, assistant treasurer, secretary or assistant secretary, *containing such facts and information as may be required by the Commissioner of Revenue as shown by the books and records of the corporation at the close of such income year."* (Emphasis added.)

There is no requirement contained in the North Carolina franchise tax statute that the Commissioner of Revenue follow

generally accepted accounting principles in making his determination of the franchise tax due from a corporation. Thus, we do not feel that *American Can* is dispositive of the case at bar.

In *National-Standard Co. v. Department of Treasury,* 180 N.W. 2d 764 (Mich. 1970), plaintiff contended that it should be permitted to deduct deferred taxes from its franchise tax base on the ground that this was in accordance with generally accepted accounting principles. Plaintiff made this argument even though there was no statutory requirement that the Commissioner follow generally accepted accounting principles. The Michigan Supreme Court rejected this argument by stating that the Commissioner was required to follow the franchise tax statute even if it contravened generally accepted accounting principles. Further, even though the plaintiff's books treated deferred income taxes as a liability and a certified public accountant concurred in this categorization, the court held that the dictates of the statute were controlling, stating:

> "Because of their professional competence, the opinions of certified public accountants are entitled to be given great weight. . . . The state, in making its determination of the privilege fee, is bound, however, to follow not the accepted standards for corporate accounting, no matter how correct such standards may be as a matter of accounting principles, *but rather the directive of the privilege fee statute.* Delegation of the power to private accountants or to CPA's to determine surplus or capital or indebtedness, in lieu of a legislative standard set forth in the statute, would be clearly unconstitutional." (Emphasis added.) 180 N.W. 2d at 769.

In determining that reserves for deferred federal income taxes were not deductible from the franchise tax base, the Michigan Court noted:

> " . . . Here, once again, we are confronted with a conflict between generally accepted accounting principles on the one hand—which may be good and prudent corporate practice by setting up of reserves to meet future contingencies—and on the other hand, with the statutory test—surplus is to be determined by deducting from the net value of the corporation's property its *outstanding indebtedness* and paid-up capital.

"Future Federal income taxes are not an outstanding indebtedness—they are a mere contingency. The fact that a tax is certain to accrue in years to come does not make it a present debt. . . . " 180 N.W. 2d at 773-74.

*See also Brunswick Corp. v. State,* 192 N.W. 2d 246 (Mich. 1971), *rev.'g,* 181 N.W. 2d 556 (Mich. App. 1970) ; *Kroger Co., v. Bowers,* 209 N.E. 2d 209 (Ohio 1965) ; *Trunkline Gas Co. v. Mississippi State Tax Comm.,* 119 So. 2d 378 (Miss. 1960).

*Brunswick Corp. v. State, supra,* involves a factual situation identical to the case at bar. In *Brunswick,* plaintiff elected, pursuant to Internal Revenue Code section 453, to have its installment sales reported as deferred income. Plaintiff, as does plaintiff in instant case, contended that its deferred federal income taxes should be deducted from its surplus for franchise tax purposes. Apparently relying upon *National-Standard Co. v. Department of Treasury, supra,* and the franchise tax statute which did not expressly permit the deduction of such amounts, the court held that such deferred income taxes could not be deducted from surplus and that the Commissioner was correct in denying taxpayer's deduction.

[4, 5]   G.S. 105-122 does not authorize either the deduction of deferred income taxes from the franchise tax base or the use of generally accepted accounting principles to compute the tax. That portion of the statute which states that the tax shall be computed from the "books and records of the corporation" is not a requirement that the Commissioner follow the categorizations placed upon the information contained in the books and records. Rather, the statute authorizes the Commissioner to require such facts and information as is deemed necessary to comply with his duty to assess the franchise tax in accordance with the statute. As was stated in *Watson v. Farms, Inc.,* 253 N.C. 238, 241-42, 116 S.E. 2d 716, 719 (1960) :

"The phrase 'in accordance with generally accepted principles of sound accounting practice' appears repeatedly in those sections of the Act [Business Corporation Act] relating to accounting and finance. Sec. 49 (b), relating to the legality of dividends, adds to the quoted phrase 'applicable to the kind of business conducted by the corporation.' This addition is, we think, an inherent qualification when the statutory provisions are applied to a particular corporation. What is standard accounting practice for a corner grocery

store may not be standard accounting practice for corporate giants such as General Motors, American Telephone & Telegraph, and similar corporations.

" . . . A corporation may, pursuant to promulgated state and federal regulations, use either a cash receipt or an accrual basis in computing its income taxes. These methods of accounting are not new. Each has been in general use for many years. It is not, we think, logical to conclude that the Legislature, in adopting the Business Corporation Act, intended to require a corporation to keep two sets of books, one for its stockholders, the other for the government, if it wished to compute its taxes on a cash receipt basis. It is even more illogical to assume that the Legislature intended by the Business Corporation Act to void regulations permitting computation of taxes on the cash receipt basis and thereby outlaw that method of accounting, or to invalidate an accepted method of determining capital and surplus for franchise tax returns required by G.S. 105-122."

In present case, the Secretary of Revenue, in making his determination of plaintiff's franchise tax liability, was bound to follow the directive of the franchise tax statute. No matter how correct certain accounting standards may be, the statute itself must control the permissible accounting methods available for the measurement of the franchise tax base. G.S. 105-122(b) clearly does not permit a deduction for future income taxes from the franchise tax base. Further, the statute does not require that the Commissioner use generally accepted accounting principles in making his determination of the franchise tax. To accept plaintiff's argument would clearly violate the statutory requirements for deductibility set forth in G.S. 105-122(b).

[6] As an alternative argument, plaintiff contends that to permit an accrual method taxpayer to deduct from its franchise tax base those taxes attributable to installment sales and to deny such a deduction to a cash-basis taxpayer reporting under the installment method (Internal Revenue Code section 453) is a denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution and a violation of Article V, Section 3 (as it existed in 1965) of the North Carolina Constitution requiring that taxes be levied by "uniform rule."

Although the provision of the North Carolina Constitution does not expressly apply to a franchise tax but rather to "property and other subjects," numerous decisions of this Court have held the clause to be applicable to license, franchise and other forms of taxation. *See Hajoca Corp. v. Clayton, Comr. of Revenue,* 277 N.C. 560, 178 S.E. 2d 481 (1971) ; *Finance Co. v. Currie, Commissioner of Revenue,* 254 N.C. 129, 118 S.E. 2d 543 (1961), and cases cited therein. In *Hajoca Corp. v. Comr. of Revenue, supra,* at 568, 178 S.E. 2d at 486, this Court stated: " '[T]he requirements of "uniformity," "equal protection," and "due process," are, for all practical purposes, the same under both the State and Federal Constitutions.' " A tax is uniform when it imposes an equal tax burden upon all members of a particular class. *Hajoca Corp. v. Clayton, Comr. of Revenue, supra.* As long as a classification is not arbitrary or capricious, but rather founded upon a rational basis, the distinction will be upheld by the Court. *In re Appeal of Martin,* 286 N.C. 66, 209 S.E. 2d 766 (1974) ; *Rigby v. Clayton, Comr. of Revenue,* 274 N.C. 465, 164 S.E. 2d 7 (1968) ; *Finance Co. v. Currie, Commissioner of Revenue,* 254 N.C. 129, 118 S.E. 2d 543, *appeal dismissed,* 368 U.S. 289, 7 L.Ed. 2d 336, 82 S.Ct. 375 (1961) ; *Nesbitt v. Gill, Comr. of Revenue,* 227 N.C. 174, 41 S.E. 2d 646, *aff'd,* 332 U.S. 749, 92 L.Ed. 336, 68 S.Ct. 61 (1947). *See also Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 3 L.Ed. 2d 480, 79 S.Ct. 437 (1959) ; *Carmichael v. Southern Coal and Coke Co.,* 301 U.S. 495, 81 L.Ed. 1245, 57 S.Ct. 868 (1937).

In instant case, we hold that the application of the franchise tax as applied to plaintiff does not violate the equal protection clause of the Fourteenth Amendment or the North Carolina Constitution. The different treatment between plaintiff and those taxpayers reporting income under the accrual method is based upon a rational reason. *Snyder v. Maxwell, Comr. of Revenue,* 217 N.C. 617, 9 S.E. 2d 19 (1940). Those taxpayers reporting under the accrual method are actually liable, at the time the franchise tax return is filed, for the income taxes arising from the installment sales. Those taxes are "accrued." A cash-basis taxpayer reporting under the installment sales method is liable for income taxes as each installment is paid. Such a taxpayer may never be liable for any taxes arising from the installment sales, and thus may never be required to pay the amounts listed as deferred taxes. This is a sufficient basis, for constitutional purposes, upon which to sustain a distinction between cash-basis and accrual taxpayers.

Plaintiff has voluntarily elected to place itself in the classification about which it now complains; to wit, a cash-basis taxpayer reporting its income under the installment method. *See Watson v. Farms, Inc., supra.* Plaintiff makes no contention that all corporations in plaintiff's classification—*i.e.,* cash-basis, corporate taxpayers reporting under the installment method—are not taxed in the same manner. In fact, it appears that all are taxed the same.

Accordingly, we hold that plaintiff, having voluntarily elected the installment method of accounting for income tax purposes, may not deduct from its franchise tax base an anticipated future state and federal income tax liability. This holding is in accordance with those cases interpreting statutes similar to G.S. 105-122, *see Trunkline Gas Co. v. Mississippi State Tax Comm., supra,* and *Brunswick Corp. v. State, supra,* and is in accordance with the interpretations of the Commissioner of Revenue and the Attorney General over a number of years. *See* 38 Op. Att'y. Gen. 84 (1966) ; 27 Op. Att'y. Gen. 229 (1944).

For the reasons stated, the decision of the Court of Appeals is reversed and the case is remanded to that court with direction that it remand the case to the Superior Court of Wake County for entry of judgment sustaining defendant's motion for nonsuit, treated as a motion for dismissal under Rule 41 of the North Carolina Rules of Civil Procedure.

Reversed and remanded.